# U.S. District Court
## Western District of Missouri (Springfield)
## CRIMINAL DOCKET FOR CASE #: <u>6:20−mj−02047−DPR</u> All Defendants

Case title: USA v. Behm                                    Date Filed: 08/25/2020

Assigned to: Magistrate Judge
David P. Rush

**<u>Defendant (1)</u>**

**Dale Behm**                     represented by   **Ann M. Koszuth**
Federal Public Defender's Office − Springfield
901 St. Louis Street
Suite 801
Springfield, MO 65806
417/873−9022
Fax: 417/873−9038
Email: <u>ann_koszuth@fd.org</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*
*Bar Status: Active*

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
| --- | --- |
| None | |

| **<u>Highest Offense Level (Opening)</u>** | |
| --- | --- |
| None | |

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
| --- | --- |
| None | |

| **<u>Highest Offense Level<br>(Terminated)</u>** | |
| --- | --- |
| None | |

| **<u>Complaints</u>** | **<u>Disposition</u>** |
| --- | --- |
| 18:3583.F | |

**<u>Plaintiff</u>**

**USA**                                represented by

**Randall D. Eggert**
U. S. Attorney's Office
901 St. Louis Street
Suite 500
Springfield, MO 65806
417/831−4406
Fax: 417/831−0078
Email: randy.eggert@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/25/2020 | 1 | | RULE 5 Charging Documents as to Dale Behm (1). (Berziel, Karla) (Entered: 08/25/2020) |
| 08/25/2020 | 2 | | Minute Entry for proceedings held before Magistrate Judge David P. Rush: INITIAL APPEARANCE in Rule 5(c)(3) Proceedings as to Dale Behm held on 8/25/2020. Time in court: 1:35 p.m. to 1:38 p.m. To order a transcript of this hearing please contact Karla Berziel, 417−865−3869. DEFENDANT ON BOND. (Berziel, Karla) (Entered: 08/25/2020) |
| 08/25/2020 | 3 | | WAIVER of Rule 5(c)(3) Hearings by Dale Behm. (Berziel, Karla) (Entered: 08/25/2020) |
| 08/25/2020 | 4 | | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Dale Behm. (Berziel, Karla) (Entered: 08/25/2020) |
| 08/25/2020 | 5 | | APPEARANCE BOND ENTERED as to Dale Behm. (Berziel, Karla) (Entered: 08/25/2020) |
| 08/25/2020 | 6 | | ORDER setting conditions of release as to Dale Behm. Defendant released on a personal recognizance bond. (Berziel, Karla) (Entered: 08/25/2020) |

**FILED**

Aug 12 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# United States District

### FOR THE
### NORTHERN DISTRICT OF CALIF

## VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

DALE BEHM; YONG HENG LIANG, a/k/a COLIN LIANG; JOSHUA STANKA;
JOSHUA CLARK; and MICHAEL CHOY,

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. § 286 – Conspiracy to Defraud the Government with Respect to Claims;
18 U.S.C. § 287 – False, Fictitious, or Fraudulent Claims;
18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1341 – Mail Fraud;
18 U.S.C. § 1957 – Money Laundering;
18 U.S.C. § 1956(a)(2)(A) – Laundering Monetary Instruments;
18 U.S.C. § 2 – Aiding and Abetting; and
18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461 – Criminal Forfeiture

---

A true bill.

/s/ Foreperson of the Grand Jury
_____
                                    Foreman

Filed in open court this ___11th___ day of

_____August, 2020_____.

Rose Maher, Courtroom Deputy

Clerk

Bail, $ _no bail_

Thomas S. Hixson, U.S. Magistrate Judge

FILED

Aug 12 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,              )  Case No.  CR20-321EMC
                                           )
12          Plaintiff,                      )
                                           )  VIOLATIONS:
13     v.                                   )  18 U.S.C. § 286 – Conspiracy to Defraud the
                                           )  Government with Respect to Claims;
14  DALE BEHM; YONG HENG LIANG, a/k/a       )  18 U.S.C. § 287 – False, Fictitious, or Fraudulent
15  COLIN LIANG, ; JOSHUA STANKA;           )  Claims;
    JOSHUA CLARK; and MICHAEL CHOY,         )  18 U.S.C. § 1343 – Wire Fraud;
16                                          )  18 U.S.C. § 1341 – Mail Fraud;
            Defendants.                     )  18 U.S.C. § 1957 – Money Laundering;
17                                          )  18 U.S.C. § 1956(a)(2)(A) – Laundering Monetary
                                           )  Instruments;
18                                          )  18 U.S.C. § 2 – Aiding and Abetting; and
                                           )  18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28
19                                          )  U.S.C. § 2461 – Criminal Forfeiture
                                           )
20                                          )
                                           )  SAN FRANCISCO VENUE
21                                          )
                                           )
22  _____ )  (UNDER SEAL)

23                          I N D I C T M E N T

24  The Grand Jury charges:

25          At all times relevant to this indictment, unless otherwise indicated, and with all dates being

26  approximate and all date ranges both approximate and inclusive:

27  //

28  //

INDICTMENT                           1

1          INTRODUCTORY ALLEGATIONS

2     Background Regarding International Cargo Shipments

3     1.     International imports and exports of cargo are frequently transported via standardized

4     shipping containers that are eight feet wide and twenty to forty feet deep.  A standardized cargo

5     container can hold in excess of 25,000 kilograms of cargo.  Standardized cargo containers can be fitted

6     to tractor trailers or train cars for road or rail shipment or loaded onto oceangoing vessels for interstate

7     and international shipment.

8     2.     Orient Overseas Container Line ("OOCL") was an interstate and international shipping

9     company headquartered in Hong Kong, Special Administrative Region of the People's Republic of

10    China ("Hong Kong").  OOCL conducts interstate and international shipping out of the Port of Oakland,

11    in the Northern District of California, among other places in the United States.

12    3.     Maersk Lines was an interstate and international shipping company headquartered in

13    Denmark.  Maersk Lines conducts interstate and international shipping out of the Port of Oakland, in the

14    Northern District of California, among other places in the United States.

15    4.     OOCL and other shipping companies required that a cargo container's sender provide

16    information for a commercial bill of lading.  The information provided by the shipper included an

17    identification of the shipper, the consignee, or recipient, the port of loading, the port of discharge, and a

18    description of the contents of the container.  Bills of lading also included the gross weight of the

19    container, the container's declared value, and information about the cost of the shipment.

20    Defendants, Entities Controlled by Defendants, and Other Entities

21    5.     Defendant YONG HENG LIANG, also known as COLIN LIANG ("LIANG"), was a

22    resident of Daly City, California.

23    6.     ML Trading Group, Inc. ("ML Trading") was a company located in San Lorenzo,

24    California, within the Northern District of California.  ML Trading filed Articles of Organization with

25    the California Secretary of State on July 14, 2014.  ML Trading purported to be an exporter of materials

26    from the United States.

27    7.     Bay Area Tire Recycling, Inc. ("BATR"), was a company located in Hayward,

28    California.  BATR was incorporated in California on November 28, 2011.  Prior to February 1, 2019,

INDICTMENT                    2

1  BATR was permitted by the State of California to have no more than 4,999 tires at its facility.  Tire

2  retailers paid BATR to recycle customers' used tires.

3          8.      LIANG controlled ML Trading and BATR.

4          9.      Under the direction and control of LIANG, BATR, which purported to recycle tires,

5  bundled and loaded used tires into shipping containers.  LIANG arranged for the containers to be

6  shipped to ports in countries in Asia, including the Republic of Korea, India, and Vietnam.

7        10.     The Pacific Rim Traders, LLC ("Pacific Rim") was a company headquartered in San

8  Francisco, California.  Pacific Rim filed Articles of Organization with the California Secretary of State

9  on April 27, 2006.

10        11.     Pacific Rim was owned and controlled by individuals in China.  Pacific Rim imported

11  thousands of metric tons per month of Polyethylene Tetraphthalate resin ("PET"), a plastic resin that can

12  be melted and formed into plastic items, including beverage bottles.  PET imports from China are

13  subject to tariffs collected by U.S. Customs and Border Protection ("CBP").

14        12.     Defendant DALE BEHM ("BEHM") was a resident of California and later Missouri.

15  From at least December 22, 2013, to at least July 12, 2017, BEHM was the General Manager of Pacific

16  Rim.

17        13.     Defendant JOSHUA STANKA ("STANKA") was a resident of Texas.  STANKA was a

18  consultant for an entity registered in Texas on or about May 24, 2013, which purported to secure rights

19  from third-party exporters for use in drawback claims by offsetting the tariffs paid by the entity's clients,

20  including Pacific Rim.

21        14.     On or about April 22, 2015, STANKA registered a Texas entity called TPP Export

22  America, LLC ("TPP Export"), which purported to secure rights from third-party importers and

23  exporters for use in drawback claims of its clients, including Pacific Rim.  STANKA was a 37.5 percent

24  owner of TPP Export.

25        15.     Defendant JOSHUA CLARK ("CLARK") was a resident of Fulshear, Texas.  CLARK

26  was President and a 37.5 percent owner of TPP Export.

27

28

6

16.     On or about February 6, 2017, CLARK registered a single-member Texas entity named Hammer Trading, as a company specializing in customs drawback consulting. CLARK and STANKA controlled Hammer Trading. In July 2017, Hammer Trading took over the clients of TPP Export.

17.     Defendant MICHAEL CHOY ("CHOY") was a resident of Canada. CHOY controlled two companies that purported to arrange for exports of recycled material, including plastic, to countries in Asia.

18.     JP Morgan Chase Bank, Bank of America, Independent Bank, and Integrity Bank were financial institutions, as that term is defined in Title 31, United States Code, Section 5312, the deposits of which were insured by the Federal Deposit Insurance Corporation. Canadian Imperial Bank of Commerce and Toronto Dominion Bank were foreign banks, as that term is defined in Title 12, United States Code, Section 3101.

Background Regarding Drawback Claims

19.     Tariffs are charges imposed by the United States on imports or exports of particular goods. Tariffs are also known as "duties."

20.     CBP is an agency of the United States, within the United States Department of Homeland Security, which is a department of the United States. Among other things, CBP is responsible for administering import and export regulations and collecting tariffs, and approving claims for refund of tariffs, known as "drawbacks." By regulation, up to 99% of the original tariff amount may be refunded through a qualifying drawback. Tariffs are imposed based on the product imported, its weight, and the country of origin.

21.     Drawback claimants submit claims to CBP. In addition to other requirements, drawback claims must be signed under penalty of perjury. If the claimant is not the original importer of the later-exported item, the claimant must submit a delivery certificate from the original importer to substantiate the claimant's right to claim a drawback. If the claim is accepted, CBP pays the drawback to the claimant by Treasury check.

22.     Subject to the posting of a customs bond and other requirements, drawback claimants may seek approval from CBP for accelerated payment of drawback claims pursuant to 19 C.F.R § 191.92. Drawback claimants that have been accepted for accelerated payment of drawback may

receive payment in as little as three weeks of electronically filed claims. The drawback claim is later reviewed by a CBP Drawback Specialist and, if approved, the claim is considered to be "liquidated." A drawback claimant filing claims under the accelerated drawback program may not claim total drawbacks in excess of the posted bond at any given time.

23. Pursuant to 19 U.S.C. § 1313(p), an importer of certain finished petroleum derivatives, including certain plastic resins such as PET, may claim a tariff drawback of up to 99% of tariffs paid for the import of such material if the item or an item "of the same kind and quality" is exported within 180 days of the import. An exported item may also be eligible to offset an imported item's tariff if the two items share an 8-digit classification according to the U.S. Harmonized Tariff Schedule ("HTS") published and maintained by the U.S. International Trade Commission.

Drawback Claims Filed by Pacific Rim

24. Pacific Rim, and other clients of TPP Export, did not export merchandise or return unused imported merchandise that would qualify for tariff drawback under 19 U.S.C. § 1313(p).

25. On or about August 15, 2013, Pacific Rim applied for approval for accelerated drawback claims. Pacific Rim was notified by letter from CBP, addressed to BEHM and dated November 22, 2013, that it was approved for accelerated drawback claims for unused merchandise substitution pursuant to 19 U.S.C. § 1313(p), subject to its posting of a bond in the amount of 100% of the drawbacks claimed under the accelerated payment program.

26. No later than December 17, 2013, Pacific Rim obtained a customs bond in the amount of $1,000,000. No later than November 24, 2014, Pacific Rim's customs bond was increased to $2,000,000.

27. On or about April 3, 2014, Pacific Rim entered into a contract with a San Francisco-based drawback broker and consulting company ("Broker-1") to electronically file Pacific Rim's drawback claims with CBP. The contract called for payment to Broker-1 of $75 for every container load of exports.

THE CONSPIRACY AND SCHEME TO DEFRAUD THE UNITED STATES

28. Paragraphs 1 through 26 above are incorporated and realleged as if fully set forth here.

29.     The defendants conspired to defraud the United States, specifically CBP, by filing false and fraudulent drawback claims seeking refunds totaling tens of millions of dollars in customs duties paid by Pacific Rim and other importers of certain types of plastic resins and polymers.

MANNER AND MEANS

30.     BEHM, STANKA, CLARK, LIANG, and CHOY, and others known and unknown to the Grand Jury, used the following manner and means, among others, to accomplish the objects of the conspiracy:

a.     On or about November 25, 2014, BEHM and others acting on behalf of Pacific Rim, increased the secured bond with CBP from $1,000,000 to $2,000,000, enabling additional drawback claims to remain pending at a given time with CBP under the accelerated drawback program.

b.     On November 25, 2014, Pacific Rim, with the assistance of STANKA and Broker-1, authorized and caused to be electronically filed with CBP a drawback claim in the amount of $88,678.42. Between November 25, 2014, and August 17, 2017, Pacific Rim caused to be filed at least 68 claims seeking drawbacks totaling at least $7,216,925 and received at least $6,427,902 based upon such claims.

c.     These drawback claims, signed under penalty of perjury by the drawback consulting company and based on assurances of accuracy by BEHM and others, were transmitted electronically to CBP by the consulting company. The drawback claims falsely claimed eligibility for refund of the customs duties based on the export of commercially interchangeable merchandise under the provisions of 19 U.S.C. § 1313(p), when in fact no such export of commercially interchangeable merchandise had occurred.

d.     Instead, at the direction of STANKA and CLARK, CHOY, LIANG, and others collected and received export bills of lading documenting the export of items that would not qualify for drawback under 19 U.S.C. § 1313(p), including for containers of waste tires exported to the Republic of Korea, India, Hong Kong, Vietnam, and other countries by LIANG and his companies (*See, e.g.*, Figures 1 and 2).

INDICTMENT                                  6

 

Figure 1                    Figure 2

e.      CHOY, at the direction of STANKA and CLARK, altered the export bills of lading to make them appear to qualify as the same kind and quality of material that Pacific Rim imported, including changing the description of the exports and adding HTS codes provided to him by STANKA and CLARK.

f.      CHOY, at the direction of STANKA and CLARK, further altered some export bills of lading to include Pacific Rim appear as the shipper of record, in order to fraudulently mislead CBP and others regarding the true owners and exporter of the items, which were LIANG and others.

g.      CHOY further added Automated Export System information to make the bills of lading appear to reflect the export of valuable merchandise when, in reality, LIANG and others had declared the values of many of the containers of waste tires too low to require the filing of export information.

h.      CHOY and others further altered some export bills of lading to fraudulently increase the weight of some containers listed on export bills of lading to increase the drawback claims of Pacific Rim and other clients of TPP Export.

i.      STANKA and CLARK directed other employees of TPP Export to prepare false invoices in the name of its clients to use as documentation to submit to the drawback claim

preparer and CBP to support the clients' drawback claims.  The invoices, some reflecting transactions of over $1,000,000, purported to be prepared by the clients, including Pacific Rim, and reflected fictitious sales of plastic resins to companies located in countries LIANG's and others' export containers were sent, with descriptions of materials which would qualify to offset the client's tariffs, although no transaction, exchange of funds, or export occurred between the buyer and purported seller.  The commercial invoices and other documents prepared by employees of TPP Export were based on the false export bills of lading prepared by CHOY and others and pricing information provided by STANKA and were generated for the sole purpose of falsely substantiating drawback claims.  Employees of TPP Export would then provide the fraudulent export bills of lading and commercial invoices to its clients to submit to its claim preparation company located in San Francisco.

j.      Although the falsified bills of lading purported to document the export of shipping containers loaded with thousands of tons of PET resin, in reality, actual shipments contained materials that would not qualify for drawback, including the waste tires of LIANG's purported tire recycling business and exports of plastic scrap and other material.

k.      BEHM, STANKA, and CLARK used information calculated by employees of Pacific Rim's drawback claim preparer about the amount of drawback claims that could be filed based on the company's customs bond to maximize the amounts to claim in subsequent drawback filings.

l.      In order to increase the fraudulent drawback claims, STANKA, CLARK, and others negotiated and purchased drawback rights and import information from plastic resin importers and provided Pacific Rim with delivery certificates in order to submit additional fraudulent drawback claims in the name of Pacific Rim and TPP Export's other clients using its accelerated drawback privileges.

m.      To conceal their roles in the conspiracy and scheme, STANKA and BEHM directed employees of Pacific Rim not to disclose to anyone the involvement of STANKA, TPP Export, or others in the preparation of drawback paperwork.

n.     In exchange for using its accelerated drawback program privileges and name on drawback claims, Pacific Rim received approximately 15% to 20% of the proceeds of its drawback claims.  The drawback consulting company received fees for preparation of the false drawback claims on a per-container basis.  STANKA, CLARK, and others, through TPP Export received the remainder of the refunds, some of which was distributed to CHOY and LIANG for their roles in providing and falsifying export documentation for submission to CBP.

o.     When claims filed in the name of Pacific Rim were approved by CBP, the third-party drawback claim preparer received the drawback checks by mail and forwarded them to Pacific Rim.  Pacific Rim cashed the checks with East West Bank in the Northern District of California, and paid the preparer's fees for preparation of claims, keeping the agreed percentage of the drawback refund and wiring the remainder to TPP Export's bank account in Texas.

p.     BEHM falsely signed certifications for the drawback claim preparer, affirming that the exported items were "commercially interchangeable" with his company's imports or that the items were "subject to the same 8-digit HTSUS tariff classification," when he knew they were not.

q.     STANKA, CLARK, and others, using TPP Export and later Hammer Trading, knowingly and intentionally used falsified bills of lading provided by CHOY and false invoices to substantiate drawback claims for other clients, knowing that they would be used to substantiate false drawback claims.

31.     STANKA, CLARK, CHOY, and others provided fraudulent export information to other clients of TPP Export, and later Hammer Trading, including two plastics importing companies located in Pennsylvania, hereafter called Company-1 and Company-2.

32.     Between 2014 and 2018, Pacific Rim, Company-1, and Company-2 filed drawback claims with CBP totaling at least $40,005,000.

33.     Fraudulent drawback claims submitted to CBP by Pacific Rim from November 2014 through 2017 totaled at least $6,427,000.

34.     Drawback claims submitted to CBP by Company-1 between 2014 and 2019 totaled at least $15,717,000.  Company-1 paid TPP Export at least $886,000 between 2015 and 2016.  Company-1

1   paid Hammer Trading at least $648,000 in 2019.  Drawback claims submitted to CBP by Company-1

2   contained fraudulent export information.

3       35.     Drawback claims submitted to CBP by Company-2 between 2014 and 2019 totaled at

4   least $17,861,000.  Company-2 paid TPP Export at least $5,598,000 between 2015 and 2017.

5   Company-2 paid Hammer Trading at least $8,261,000 between 2017 and 2019.  Drawback claims

6   submitted to CBP by Company-2 contained fraudulent export information.

7                           THE SCHEME TO DEFRAUD SHIPPING COMPANIES

8       36.     LIANG defrauded interstate and international shipping companies of shipping fees for

9   cargo containers and for disposal costs associated with those abandoned shipments.

10                                  MANNER AND MEANS

11      37.     LIANG and others known and unknown to the Grand Jury used the following manner and

12  means, among others, to accomplish the objects of the scheme:

13          a.      In order to evade collection of shipping fees after the containers had been

14          delivered to foreign ports, including the Republic of Korea, LIANG provided false information

15          to the shipping companies about the shipper of containers, including listing the shipper as

16          "Sigma Recycling, Inc.," "Asian International Trading," "Alpine Tire Trading, Inc.," and

17          Transpacific Global Logistics Corp."

18          b.      LIANG provided false information to the shipping companies, including OOCL

19          and Maersk Lines, about the foreign consignees that the shipping companies expected to retrieve

20          the rubber and scrap plastic shipments.  Among other things, LIANG listed defunct or dissolved

21          consignees for shipments to ports in Asia, in order to impose disposal fees in foreign locations

22          for such cargo that LIANG could not sell or cause to be recycled.  Shipping companies,

23          including OOCL, incurred port fees, known as "demurrage" for LIANG's unclaimed shipments.

24          c.      OOCL accrued at least $600,000 for destruction of 128 shipping containers sent

25          by LIANG as ML Trading, care of Pacific Rim left in Busan, Republic of Korea.

26          d.      LIANG further listed sham entity names and false business addresses on shipping

27          instructions sent to shipping companies, including OOCL and Maersk Lines, in order to evade

28          payment of shipping fees.

INDICTMENT                                         10

1            e.      Maersk Lines accrued at least $230,000 in unpaid shipping fees as a result of

2 LIANG's false and misleading shipping information.

3 COUNT ONE: (18 U.S.C. § 286 – Conspiracy to File False Claims)

4       38.     Paragraphs 1 through 35 above are incorporated and realleged as if fully set forth here.

5       39.     Beginning at a time unknown to the Grand Jury but no later than on or about July 17,

6 2014, and continuing to at least on or about September 27, 2019, in the Northern District of California

7 and elsewhere, the defendants,

DALE BEHM,
JOSHUA STANKA,
JOSHUA CLARK,
YONG HENG LIANG, and
MICHAEL CHOY

11 entered into an agreement, combination and conspiracy with each other and with others to defraud U.S.

12 Customs and Border Protection, an agency of the United States, by obtaining and aiding to obtain the

13 allowance and payment of false, fictitious, and fraudulent drawback claims, knowing that such claims

14 were false, fictitious, and fraudulent.

15      All in violation of Title 18, United States Code, Section 286.

16 COUNTS TWO THROUGH SIXTEEN: (18 U.S.C. §§ 287 and 2 – False, Fictitious, or Fraudulent
17 Claims)

18       40.     Paragraphs 1 through 35 above are incorporated and realleged as if fully set forth here.

19       41.     On the dates described in the table below, in the Northern District of California and

20 elsewhere, the defendants,

DALE BEHM,
JOSHUA STANKA,
JOSHUA CLARK,
YONG HENG LIANG, and
MICHAEL CHOY

24 made and presented to the United States tariff drawback claims of The Pacific Rim Traders, LLC, which

25 claims defendants knew each to be false, submitted on the following dates and in the following amounts:

| Count | Date of Fraudulent Claim | Date U.S. Treasury Check Deposited | Claim Number | Amount of Claim |
|---|---|---|---|---|
| 2 | 11/02/2015 | 12/04/2015 | APN/11502704 | $655,850.13 |
| 3 | 4/13/2016 | 5/16/2016 | APN/11603106 | $349,031.41 |
| 4 | 4/29/2016 | 6/13/2016 | APN/11603155 | $216,340.73 |

INDICTMENT            11

14

| Count | Date of Fraudulent Claim | Date U.S. Treasury Check Deposited | Claim Number | Amount of Claim |
|-------|-------------------------|-----------------------------------|--------------|-----------------|
| 5 | 6/03/2016 | 7/5/2016 | APN/11603247 | $330,776.23 |
| 6 | 8/10/2016 | 9/9/2016 | APN/11603411 | $476,436.66 |
| 7 | 10/11/2016 | 11/14/2016 | APN/31620791 | $187,190.02 |
| 8 | 10/18/2016 | 12/19/2016 | APN/31620858 | $385,038.78 |
| 9 | 12/05/2016 | 1/19/2017 | APN/31620916 | $156,059.30 |
| 10 | 12/15/2016 | 1/19/2017 | APN/31620981 | $395,723.40 |
| 11 | 1/20/2017 | 2/27/2017 | APN/31721110 | $55,664.80 |
| 12 | 2/07/2017 | 3/20/2017 | APN/31721151 | $94,981.74 |
| 13 | 5/10/2017 | 6/20/2017 | APN/31721441 | $243,408.49 |
| 14 | 6/7/2017 | 7/10/2017 | APN/31721524 | $192,877.88 |
| 15 | 6/16/2017 | 7/19/2017 | APN/31721565 | $226,194.59 |
| 16 | 7/06/2017 | 8/8/2017 | APN/31721573 | $93,016.62 |

Each in violation of Title 18, United States Code, Sections 287 and 2.

COUNTS SEVENTEEN THROUGH TWENTY-EIGHT: (18 U.S.C. §§ 1343 and 2 – Wire Fraud)

42. Paragraphs 1 through 35 are incorporated and realleged as if fully set forth here.

43. On or about the dates provided below, in the Northern District of California and elsewhere, the defendants,

DALE BEHM,
JOSHUA STANKA,
JOSHUA CLARK,
YONG HENG LIANG, and
MICHAEL CHOY

and others, did knowingly, and with the intent to defraud, participate in, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose, and attempting to do so, did knowingly transmit, and cause to be transmitted, the following writings, signs, signals, pictures, and sounds in interstate and foreign commerce by means of wire communications in interstate commerce:

| Count | Date | Description of Wire(s) |
|-------|------|------------------------|
| 17 | 8/19/2015 | Email correspondence between STANKA and BEHM, subject: "PRT-TPP drawback joint project" |
| 18 | 10/05/2015 | Email from LIANG to CHOY with photographic attachments, subject: "Loading pics" |
| 19 | 10/12/2015 | Email from CHOY to LIANG, subject "BLs" with attachments |
| 20 | 2/26/2016 | Email from LIANG to CHOY, subject: "Fwd: OOCL – Copy Bill of Lading for OOLU4037367930 HANJIN CHONGQUING 039 w" |

15

| Count | Date | Description of Wire(s) |
|-------|------|------------------------|
| 21 | 2/29/2016 | Email from CHOY to STANKA, subject: "BLs 2/29" |
| 22 | 3/2/2016 | Email from employee of Pacific Rim to drawback claim preparer, BEHM, and employee of TPP Export, subject: "Engineering Resin FW: Drawback Documents" |
| 23 | 4/01/2016 | Email from employee of TPP Export to CLARK and employee of Pacific Rim, subject: "New claim docs" |
| 24 | 4/01/2016 | Email from employee of Pacific Rim to BEHM, the drawback claim preparer, and an employee of TPP Export, subject: "New Claim Docs – Engineering Resins" |
| 25 | 6/14/2016 | Email correspondence between CHOY and CLARK, subject: "Change BL" |
| 26 | 10/04/2016 | Email correspondence between STANKA, CLARK, and BEHM, subject: "RE: Contract and Forecast" |
| 27 | 3/14/2017 | Email correspondence between STANKA, CLARK, and BEHM, subject: "RE: ML Trading issue" |
| 28 | 3/15/2017 | Email correspondence involving STANKA, BEHM, and LIANG, subject: "RE: Korea Containers @ Port" |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS TWENTY-NINE THROUGH THIRTY: (18 U.S.C. §§ 1341 and 2 – Mail Fraud)

44.    Paragraphs 1 through 37(e) are incorporated and realleged as if fully set forth here.

45.    On or about the dates provided below, in the Northern District of California and elsewhere, the defendant,

YONG HENG LIANG,

did knowingly, and with the intent to defraud, participate in, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose, and attempting to do so, did knowingly cause to be delivered by a private and commercial interstate carrier at the place at which it was directed to be delivered by the person or entity to whom it was addressed the following matters and things:

| Count | Date | Description of Item Transmitted |
|-------|------|--------------------------------|
| 29 | 2/6/2016 | 15 40' containers (Orient Overseas Container Line Bill of Lading #OOLU4037312910), description "scrap rubber," weighing 377,361 kilograms |
| 30 | 2/6/2016 | 14 40' containers (Orient Overseas Container Line Bill of Lading #OOLU4037312870), description "scrap rubber," weighing 351,728 kilograms |

1    Each in violation of Title 18, United States Code, Sections 1341 and 2.

2 COUNT THIRTY-ONE THROUGH THIRTY-EIGHT: (18 U.S.C. §§ 1957 and 2 – Money Laundering)

3    46.    Paragraphs 1 through 43 above are incorporated and realleged as if fully set forth here.

4    47.    On or about the dates alleged below, in the Northern District of California and elsewhere,

5 the defendants listed in the table below did knowingly engage and attempt to engage in the following

6 monetary transactions by, through, and to a financial institution, affecting interstate and foreign

7 commerce, in criminally derived property of a value greater than $10,000, such funds having been

8 derived from the specified unlawful activity of wire fraud in violation of Title 18, United States Code,

9 Section 1343:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 31 | JOSHUA STANKA | 3/14/2016 | $246,250 | Funds Transfer from TPP Export Independent Bank Account #3604 to Independent Bank Account #2388 controlled by STANKA |
| 32 | JOSHUA CLARK | 12/08/2016 | $50,000 | Funds Transfer from TPP Export Independent Bank Account #3604 to Independent Bank Account #3550 controlled by CLARK |
| 33 | JOSHUA STANKA | 2/06/2017 | $210,000 | Wire Transfer from TPP Export Bank of America Account #0885 to Bank of America Account #6192 controlled by STANKA |
| 34 | JOSHUA STANKA | 7/19/2017 | $50,000 | Check from TPP Export Bank of America Account #0885 deposited into Integrity Bank Account #2388 controlled by STANKA |
| 35 | JOSHUA CLARK | 7/26/2017 | $90,000 | Funds Transfer from Hammer Trading Independent Bank Account #1797 to Independent Bak Account #3550 controlled by CLARK |
| 36 | JOSHUA CLARK and JOSHUA STANKA | 5/21/2018 | $150,000 | Funds Transfer from Hammer Trading Independent Bank Account #1797 to First Financial Bank Account #2270 controlled by STANKA |
| 37 | JOSHUA CLARK and MICHAEL CHOY | 7/10/2018 | $20,000 | Wire Transfer from Hammer Trading Chase Account #5670 to account controlled by CHOY at Canadian Imperial Bank of Commerce |

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 38 | JOSHUA CLARK | 8/16/2019 | $130,000 | Check deposited to Chase Account #1904 from Hammer Trading Independent Bank Account #1797 |

Each in violation of Title 18, United States Code, Section 1957.

COUNTS THIRTY-NINE THROUGH FORTY-TWO: (18 U.S.C. §§ 1956(a)(2)(A) and 2 – Laundering of Monetary Instruments)

48.     Paragraphs 1 through 43 above are incorporated and realleged as if fully set forth here.

49.     On or about the dates alleged below, in the Northern District of California and elsewhere, the defendants listed in the table below, did knowingly transport and transfer monetary instruments listed in the table below, from or to a place outside the United States, to or from a place inside the United States, with intent to promote the carrying on of the specified unlawful activity of wire fraud in violation of 18 U.S.C. § 1343, and in doing so did conduct the financial transactions listed in the chart below:

| Count | Defendants | Date | Amount | Description |
|---|---|---|---|---|
| 39 | YONG HENG LIANG and MICHAEL CHOY | 1/06/2018 | $4,990 | Wire Transfer from account controlled by CHOY at Toronto Dominion Bank Account to BATR Wells Fargo Account #6008 controlled by LIANG |
| 40 | YONG HENG LIANG and MICHAEL CHOY | 02/02/2018 | $7,480 | Wire Transfer from account controlled by CHOY at Canadian Imperial Bank of Commerce Account to BATR Wells Fargo Account #6008 controlled by LIANG |
| 41 | JOSHUA CLARK and MICHAEL CHOY | 7/10/2018 | $20,000 | Wire Transfer from Hammer Trading Chase Account #5670 to CHOY account at Canadian Imperial Bank of Commerce. |
| 42 | YONG HENG LIANG and MICHAEL CHOY | 1/04/2019 | $14,406.11 | Wire Transfer from account controlled by CHOY at Canadian Imperial Bank of Commerce to LIANG Bank of America Account #2353 |

Each in violation of Title 18, United States Code, Section 1956(a)(2)(A).

//

INDICTMENT                                        15

18

1  COUNT FORTY-THREE:  (18 U.S.C. §§ 1519 and 2 – Falsification of Records to Obstruct
2  Investigation)

3      50.     Paragraphs 1 through 49 are realleged as if fully set forth herein.

4      51.     On or about October 10, 2017, in the Northern District of California and elsewhere, the
5  defendant,

6                              YONG HENG LIANG

7  knowingly altered, falsified, and made false entries in a record, document, and tangible object, namely
8  creating and causing to be mailed to an employee of the Department of Homeland Security a fabricated,
9  false, and backdated purchase order for 100 containers loaded with waste tires, with the intent to
10  impede, obstruct, and influence an actual and contemplated investigation and the proper administration
11  of a matter within the jurisdiction of a department and agency of the United States, namely the
12  Department of Homeland Security.

13      All in violation of Title 18, United States Code, Section 1519 and 2.

14  FORFEITURE ALLEGATION:

15      52.     The factual allegations contained in Paragraphs One through Forty-Nine are hereby
16  realleged for the purpose of alleging forfeiture to the United States of America pursuant to Title 18,
17  United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); and Title
18  18, United States Cade, Section 982(a)(1).

19      53.     Upon conviction of the offenses in Counts Seventeen through Thirty of this Indictment,
20  the defendants,

21                              DALE BEHM,
                             JOSHUA STANKA,
22                              JOSHUA CLARK,
                          YONG HENG LIANG, and
23                              MICHAEL CHOY

24  shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section
25  981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), any property, real or
26  personal, which constitutes or is derived from proceeds traceable to a violations of Title 18, United
27  States Code, Sections 1341 and 1343.  The United States will also seek a forfeiture money judgment
28  against each defendant equal to the value of any property, real or personal, which constitutes or is

19

1    derived from proceeds traceable to these offenses.

2       54.      Upon conviction of the offenses in Counts Thirty-One through Forty-Two of this

3    Indictment, the defendants,

4                 JOSHUA STANKA,
                  JOSHUA CLARK,

5            YONG HENG LIANG, and
                MICHAEL CHOY

6

7    shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1),

8    any property, real or personal, involved in a violation of Title 18, United States Code, Sections 1956

9    and/or 1957, or any property traceable to such property.  The United States will also seek a forfeiture

10    money judgment against each defendant equal to the value of any property, real or personal, involved in

11    these offenses, or property traceable to such property.

12       55.      If any of the property described above, as a result of any act or omission of the defendant:

13              a.      cannot be located upon exercise of due diligence;

14              b.      has been transferred or sold to, or deposited with, a third party;

15              c.      has been placed beyond the jurisdiction of the court;

16              d.      has been substantially diminished in value; or

17              e.      has been commingled with other property which cannot be divided

18                  without difficulty,

19    the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

20    United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

21

22    //

23

24    //

25

26    //

27

28    //

INDICTMENT                  17

1    All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28,

2   United States Code, Section 2461(c); Title 21, United States Code, Section 853; and Federal Rule of

3   Criminal Procedure 32.2.

4
                                                A True Bill
5
    Dated: August 11, 2020                        /s/
6                                       _____
                                        FOREPERSON
7

8   DAVID L. ANDERSON
    United States Attorney
9

        /s/
10  _____
    COLIN SAMPSON
11  Assistant United States Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT                               18

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

### MINUTE SHEET

**UNITED STATES OF AMERICA**                    **Date: August 25, 2020**

**vs.**                                          **Case No.: 20-mj-2047DPR**

**DALE BEHM**

---

**Honorable David P. Rush, presiding at Springfield, Missouri**

**Nature of Hearing:   Rule 5(c)(3) Out – Initial Appearance**

**Time Commenced:   1:35 p.m.**                  **Time Terminated:  1:38 p.m.**

---

### APPEARANCES

| | |
|---|---|
| **Plaintiff:** | **Randy Eggert, AUSA** |
| **Defendant:** | **Ann Koszuth, FPD** |
| **USPPTS:** | **Sarah Carlstrom** |

---

**Proceedings:  Parties appear as indicated above.  Defendant appears in person.**

> **FPD's appointed for this district only.  Government does not move for detention.  Defendant advised of rights and questioned as to completion of the waiver of Rule 40 hearings.  Defendant waives the right to an identity hearing and a detention hearing in this district.  Defendant reserves the right to a preliminary and detention hearing in the charging district.  Defendant ordered to be released on bond and to report by video on September 2, 2020 at 10:30 a.m. in the Northern District of California.  Defendant has read and agrees to abide by the *Appearance Bond* and *Order Setting Conditions of Release.***

> **Defendant on bond.**

---

**Courtroom Deputy/ERO:  Karla Berziel**

AO 466A (Rev. 12/09)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the

Western  District of Missouri

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.    20-mj-2047DPR |
| | ) | |
| DALE BEHM | ) | Charging District's Case No.    CR20-321EMC |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*   Northern District of California

San Francisco Division                                                                                                    .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise —
        unless I am indicted — to determine whether there is probable cause to believe that an offense has
        been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐     an identity hearing and production of the warrant.

☐     a preliminary hearing.

☐     a detention hearing.

☒     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may
      be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set
      by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are
pending against me.

Date:      8/25/2020

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Ann M. Koszuth
_____
*Printed name of defendant's attorney*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action |
| DALE BEHM, | ) | No. 20-mj-2047DPR |
| | ) | |
| Defendant. | ) | |

## ORDER APPOINTING COUNSEL

The above-named defendant having appeared before the United States Magistrate Judge on

the 25th day of August, 2020, the United States Magistrate Judge finds that defendant not having

waived counsel, it is

ORDERED that the Federal Public Defenders' Office for the Western District of Missouri

be, and it is hereby, appointed to represent the defendant before the United States Magistrate Judge

in this district.


_/s/ David P. Rush_

DAVID P. RUSH
United States Magistrate Judge


Date:   August 25, 2020

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
Western District of Missouri

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Dale Behm | ) | Case No. 20-mj-3047DPR |
| | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Dale Behm _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✕ ) to appear for court proceedings;
( ✕ ) if convicted, to surrender to serve a sentence that the court may impose; or
( ✕ ) to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ✕ ) (1) This is a personal recognizance bond.

( ) (2) This is an unsecured bond of $ _____ .

( ) (3) This is a secured bond of $ _____ , secured by:

( ) (a) $ _____ , in cash deposited with the court.

( ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it – such as a lien, mortgage, or loan – and attach proof of ownership and value)*:

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

( ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 3:20-cr-00321-EMC   Document 11   Filed 08/28/20   Page 25 of 29
Case 6:20-mj-02404-DPR   Document 7-5   Filed 08/25/20   Page 25 of 29

25

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;
(2)     the property is not subject to claims, except as described above; and
(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _8 - 25 - 20_                                            _____
                                                             *Defendant's signature*

_____                              _____
*Surety/property owner – printed name*             *Surety/property owner – signature and date*

_____                              _____
*Surety/property owner – printed name*             *Surety/property owner – signature and date*

_____                              _____
*Surety/property owner – printed name*             *Surety/property owner – signature and date*

                                    *CLERK OF COURT*

Date: _____

                                    _____
                                    *Signature of Clerk or Deputy Clerk*

Approved.

Date: _8/25/20_                                       _____
                                                     *Judge's signature*

# UNITED STATES DISTRICT COURT
for the
Western District of Missouri

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 20-2047DPR |
| Dale Behm | ) | |
| | ) | |
| _Defendant_ | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)   The defendant must not violate federal, state, or local law while on release.

(2)   The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3)   The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)   The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:   Northern District of California, San Francisco Division via Zoom video
_____
_Place_

(contact Stephen Ybarra at 415-522-3694 or Stephen_Ybarra@cand.uscourts.gov for link to Zoom video)

on                                       9/2/2020 10:30 am
_____
_Date and Time_

If blank, defendant will be notified of next appearance.

(5)   The defendant must sign an Appearance Bond, if ordered.

\* Court appearance is 10:30 am PST or 8:30 am CST

Case 3:20-cr-00321-EMC   Document 11   Filed 08/28/20   Page 27 of 29
Case 6:20-mj-02404-DPR   Document 7-1   Filed 08/25/20   Page 27 of 29

27

AO 199B  (Rev. 12/11)  Additional Conditions of Release                                                                Page  2  of  3  Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(  )  (6)  The defendant is placed in the custody of:

Person or organization _____

Address *(only if above is an organization)* _____

City and state _____  Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____  _____

                                            *Custodian*                                  *Date*

( ✗ )  (7)  The defendant must:

( ✗ )  (a)  submit to supervision by and report for supervision to the   pretrial services as directed                    ,
telephone number _____ , no later than _____

(  )  (b)  continue or actively seek employment.

(  )  (c)  continue or start an education program.

( ✗ )  (d)  surrender any passport to:   Pretrial Services

( ✗ )  (e)  not obtain a passport or other international travel document.

( ✗ )  (f)  abide by the following restrictions on personal association, residence, or travel:   Northern District of California and State of
Missouri, unless otherwise approved by pretrial services.

( ✗ )  (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
including: _____

(  )  (h)  get medical or psychiatric treatment: _____

(  )  (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
or the following purposes: _____

(  )  (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
necessary.

( ✗ )  (k)  not possess a firearm, destructive device, or other weapon.

( ✗ )  (l)  not use alcohol (  ) at all ( ✗ ) excessively.

( ✗ )  (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
medical practitioner.

(  )  (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random
frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited
substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited
substance screening or testing.

(  )  (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
supervising officer.

(  )  (p)  participate in one of the following location restriction programs and comply with its requirements as directed.

(  ) (i)  **Curfew.** You are restricted to your residence every day (  ) from _____ to _____ , or (  ) as
directed by the pretrial services office or supervising officer; or

(  ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical,
substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
approved in advance by the pretrial services office or supervising officer; or

(  ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
court appearances or other activities specifically approved by the court.

(  )  (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
requirements and instructions provided.

(  ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
supervising officer.

( ✗ )  (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
arrests, questioning, or traffic stops.

( ✗ )  (s)  Report to pretrial services prior to any court appearance.

AO 199C  (Rev. 09/08)  Advice of Penalties          Page ___3___ of ___3___ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year.  This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive.  In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release.  I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed.  I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

Springfield Mo-
_____
*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
(    ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release.  If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: 8/25/2020          _____
*Judicial Officer's Signature*

David P. Rush, U.S. Magistrate Judge
*Printed name and title*

DISTRIBUTION:   COURT     DEFENDANT     PRETRIAL SERVICE     U.S. ATTORNEY     U.S. MARSHAL