ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

COLIN SAMPSON (CABN 249784)
AJAY KRISHNAMURTHY (CABN 305533)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7050
    FAX: (415) 436-7234
    Ajay.krishnamurthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. 20-CR-321-EMC** |
|     Plaintiff, | ) |
| | ) **USA Memorandum in Opposition to Defendant's** |
| | ) **Motion to Strike (ECF No. 196) and Motion for** |
|     v. | ) **Discovery Cutoff (ECF No. 195)** |
| | ) |
| DALE BEHM, | ) |
| | ) |
|     Defendant. | ) |

Behm's motions should be denied.

First, Behm's motion to strike language from the indictment is meritless. None of the language he identifies is inflammatory or prejudicial. And while he claims that the phrase "among others" impermissibly broadens the charges against him, every court of which the United States is aware has rejected his argument.

Second, Behm's request for a "pretrial discovery order" should be denied too. Far from serving as a "practical, prophylactic measure," the order that he seeks is unnecessary under the facts of this case.

## I.      Background

### A.   Indictment

The indictment charges defendants Dale Behm, Colin Liang, Joshua Stanka, Joshua Clark, and Michael Choy with a number of offenses related to the submission of false drawback claims to Customs and Border Protection. Count One alleges a conspiracy to defraud the United States, in violation of 18 U.S.C. § 286. ECF No. 1, ¶¶ 28–39. Consistent with the statutory language, Count One identifies a single victim: the United States. ECF No. 1, ¶ 39. As relevant here, Count One also sets out the "manner and means" of the conspiracy. Specifically, Paragraph 30 alleges that Behm, Stanka, Clark, Liang, and Choy used, "among others," the means described in paragraphs 30(a) – 30(q). Subparagraph 30(f) alleges that defendant Choy, at the direction of Stanka and Clark, "further altered the export bills of lading. . . in order to mislead CBP and others." ECF No. 1, ¶ 30(f).

### B.   Discovery

Since the grand jury returned this indictment in August 2020, the United States has made several productions to the defendant, totaling approximately 500,000 pages. This does not include electronic data; the government has also produced approximately 1 terabyte (1,000 gigabyte), including the contents of seized electronic devices. The Court's November 16, 2022 pretrial order contemplates additional disclosures, including an exchange of exhibits three weeks prior to the date of the pretrial conference, currently set for August 8, 2023. ECF No. 179.

In that same time period, the defense has produced nothing to the United States.

## II.     Argument

### A.   *The motion to strike language from the indictment should be denied.*

Behm's motion to strike should be denied. For one, it is untimely. Specifically, the Court's September 10, 2021 order provided that "pretrial legal and evidentiary motions shall be" filed "no later than October 14, 2021." ECF No. 89. Consistent with that order, defendant Clark filed motions for a bill of particulars and to suppress statements and evidence on October 14, 2021; this Court denied both motions on November 19, 2021. ECF No. 107. Behm filed nothing until April 13, 2023—about 17 months after that deadline had passed. He now claims that this Court set only a "target date" and "not a strict deadline," but that's not what this Court's order says. ECF No. 89 ("pretrial legal and evidentiary

motions shall be . . . filed no later than October 14, 2021"). Behm also says that "neither defense counsel . . . entered an appearance in this case until after November 2021," but of course, that makes no difference since prior counsel also worked for the same Federal Public Defender. In short, Behm offers no good reason to overlook his tardiness, and that's reason enough to deny his motion.

And even if the Court were to turn to the merits of Behm's argument, there are none. Federal Rule of Criminal Procedure 7(d) provides that a "court may strike surplusage from the indictment or information." The Application Note to this section makes clear that the rule is focused on allegations that are "immaterial or irrelevant ..., which may, however, be prejudicial." As a result, "[a] motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 1459444, at *3 (N.D. Cal. Apr. 9, 2010). *See also United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1987) (purpose of Rule 7(d) is to protect the defendant from "prejudicial or inflammatory allegations that are neither relevant nor material to the charges").

Behm does not attack any language in the indictment as prejudicial or inflammatory.[1] Instead, relying on *United States v. Pope*, 189 F. Supp. 12 (S.D.N.Y. 1960), Behm argues that that the phrase "among others" in paragraphs 30 and 30(f) of the Indictment should be struck because it impermissibly broadens the indictment.

Behm's argument is meritless. In *Pope*, the relevant counts alleged "misstatements and omissions of material facts" in a series of proxy statements. 189 F. Supp. at 19. In each of those charges, the phrase "among other things" was "followed by a specification of the respect in which it is charged the statements are false and misleading." *Id.* at 25. In other words, the phrase "among other things" in *Pope* preceded the specific false statements that formed the basis of the charges. The court therefore struck the phrase "among other things" from the indictment, concluding that the open-ended language

---

[1] The United States expects, consistent with this Court's practice, that the indictment will not be submitted to the jury. As a result, it is difficult to conceive of any prejudice within the meaning of Rule 7(d). *United States v. Bordewick*, No. CR-06-00022-DLJ, 2007 WL 4287333, at *4 (N.D. Cal. Dec. 5, 2007) ("Allegations in the indictment that are never read to the jury are not prejudicial and therefore need not be stricken"); *United States v. Williams*, 445 F.3d 724, 734 (4th Cir. 2006) (finding no prejudice in denial of motion to strike "since the indictment was not given to the jury and the district court specifically instructed the jury that the indictment was not evidence.").

1    there would have permitted the defendants to "be prosecuted and convicted on charges of falsity in the

2    [proxy] statements not considered by the grand jury or, if considered, [possibly] rejected by it." *Id.* at 26.

3    "The problem identified in *Pope* only arises, however, if the broadening language appears in a

4    charging paragraph." *United States v. Kassir*, No. S2 04 CR. 356 (JFK), 2009 WL 995139, at *3

5    (S.D.N.Y. Apr. 9, 2009). As a result, "courts have approved the use of broadening language in the

6    'means' section of indictments because it goes only to the matter of proof and does not constitute a basis

7    for asserting that the notice provided in a charge is constitutionally defective." *United States v.*

8    *Menendez*, 137 F. Supp. 3d 688, 707 (D.N.J. 2015), aff'd, 831 F.3d 155 (3d Cir. 2016) (citation omitted

9    and alteration adopted). *See also United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976)

10   ("Likewise, the reference to 'by other means' in the indictment in question here goes only to the matter

11   of proof and does not constitute a basis for asserting that the notice provided in Count 2 is

12   constitutionally defective."); *United States v. Jesenik*, No. 3:20-CR-228-SI, 2022 WL 11815826, at *13

13   (D. Or. Oct. 20, 2022) (declining to strike language where "[t]he challenged terms and phrases here are

14   only found in the "manner and means" sections."); *United States v. Washington*, 947 F. Supp. 87, 91

15   (S.D.N.Y. 1996) ("Accordingly, the defendant's motion to strike the words 'by various means,

16   including, among other things' is denied."); *United States v. Kassir*, No. S2 04 CR. 356 (JFK), 2009 WL

17   995139, at *4 (S.D.N.Y. Apr. 9, 2009) ("The allegation in Count One that Defendant committed certain

18   overt acts, 'among others,' likewise is permissible."); *United States v. Mayo*, 230 F. Supp. 85, 86

19   (S.D.N.Y. 1964) (denying motion to strike where "the words 'among others' are contained in the means

20   paragraph, which goes to the matter of proof to sustain the charges").

21   Here, because the phrase "among others" is used only in describing the "manner and means" of

22   the conspiracy—and does not appear in any charging paragraph—it does not impermissibly broaden the

23   conspiracy alleged in Count One. Instead, the phrase "goes only to the matter of proof and does not

24   constitute a basis for asserting that the notice provided in Count [One] is constitutionally defective."

25   *Haldeman*, 559 F.2d at 126.  *See also United States v. Booth*, No. 99 CR. 378 LBS, 1999 WL 1192317,

26   at *11 (S.D.N.Y. Dec. 14, 1999) ("When a means paragraph, which refers to the matter of proof to

27   sustain the charges, contains surplusage, a court should not strike the language." (citations omitted and

28   alterations adopted)).

1  Nor does *United States v. Lonich*, No. 14-CR-00139-SI-1, 2016 WL 324039 (N.D. Cal. Jan. 27,

2  2016), provide any support for Behm's argument. In *Lonich*, the indictment alleged that there existed a

3  "material scheme to defraud Sonoma Valley bank *and others* and to obtain money from Sonoma Valley

4  Bank *and others*." *Id.* at 6. As a result, Judge Illston found that "the indictment here is open-ended and

5  unclear as to the number of victims." *Id.* at *7. But here, the indictment is not open-ended because it

6  identifies a single victim: the United States. In fact, that is what the statute requires. As explained above,

7  Count One alleges a violation of 18 U.S.C. § 286, which requires a "conspiracy to defraud the

8  Government with respect to claims."

9  Behm also raises the specter of a "constructive amendment" or "prejudicial variance." ECF No.

10 196 at 4. However, he advances no specific argument.  "A skeletal 'argument', [that is] nothing more

11 than an assertion, does not preserve a claim." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

12 1991). For this reason alone, the Court should consider any constructive amendment or variance

13 argument waived.

14 In any event, neither concept has any application here. "An amendment of the indictment occurs

15 when the *charging terms* of the indictment are altered, either literally or in effect, by the prosecutor or a

16 court after the grand jury has last passed upon them." *United States v. Ward*, 747 F.3d 1184, 1189 (9th

17 Cir. 2014) (citation omitted and emphasis altered). And a variance "occurs when the *charging terms* of

18 the indictment are left unaltered, but the evidence offered at trial proves facts materially different from

19 those alleged in the indictment." *Id.* (citation omitted and emphasis altered).

20 As explained above, the "charging terms" of an indictment do not include the "manner and

21 means" of a conspiracy. *See, e.g.*, *Menendez*, 137 F. Supp. 3d at 707; *Haldeman*, 559 F.2d at 126;

22 *Jesenik*, No. 3:20-CR-228-SI, 2022 WL 11815826, at *13; *Washington*, 947 F. Supp. at 91; *Kassir*, 2009

23 WL 995139, at *4. In other words, because "the Government is not required to set forth all the acts

24 relied upon to effectuate the conspiracy," *Booth*, 1999 WL 1192317, at *11, the language of paragraphs

25 30 and 30(f)—describing the manner and means of the conspiracy—cannot give rise to a constructive

26 amendment or variance. *United States v. Kogan*, 283 F. Supp. 3d 127, 132 (S.D.N.Y. 2017) (the

27 indictment "is not required to disclose the manner in which [the United States] will attempt to prove the

28 charges, nor the means by which the crimes charged were committed"); *United States v. Begnaud*, 783

F.2d 144, 148 (8th Cir. 1986) ("We also reject Begnaud's contention that a fatal variance resulted from the fact that the indictment set forth two specific representations Begnaud allegedly made in furtherance of his scheme to defraud whereas the prosecution offered evidence of, and the court's instructions allowed the jury to consider, other misrepresentations allegedly made by Begnaud.").

In short, this Court should adopt the approach of every other court of which the United States is aware, and deny Behm's motion to strike.

### B.   *This Court should not enter a pretrial discovery order*

Behm's motion for a pretrial discovery order should be denied too. To begin with, the United States has complied with its discovery obligations and intends to continue to do so through the resolution of this case—and that may involve disclosures before, during, and after trial. Behm claims that he "anticipates the production of additional, critical discovery and disclosures," but does not say why—unless Behm is referring to disclosures that he's anticipating making for the first time in this case.

Moreover, although Behm relies primarily on California Rule of Professional Conduct 3.8(D), he overstates the scope and purpose of that rule. The rule is one of professional ethics, and exists to regulate the conduct of prosecutors practicing in California. If a prosecutor violates the rule, the remedy is a disciplinary proceeding before the State Bar. Rule 3.8 does not create discovery rights for criminal defendants beyond those provided by federal law and the Constitution. The commentary to the rule makes this clear: it states that the rule "does not require disclosure of information protected from disclosure by federal or California laws and rules, as interpreted by case law or court orders." *Id.* And if that were not enough, the commentary also states that Rule 3.8(D) "is not intended to impose timing requirements different from those established by statutes, procedural rules, court orders, and case law interpreting those authorities and the California and federal constitutions."

Behm cannot justify the redundancy that his requested order would create. If the Court decides that material was not produced in a timely fashion, it already has many possible remedies at its disposal. Federal Rule of Criminal Procedure 16(d) provides that the Court may "grant a continuance"; "prohibit [a] party from introducing the undisclosed evidence"; or "enter any other order that is just under the circumstances."

The key here is that inquiry should be a fact-specific one, examining both the circumstances of

the disclosure and any potential prejudice to the defendant. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).

Third, the scope of the order that Behm seeks is unclear. As the Court knows, the United States will be acquiring and generating material subject to its discovery obligations through the end of trial. There are also certain types of documents—such as Jencks material—that this Court cannot compel the United States to produce on Behm's requested timeline.[2] *United States v. Harris*, 543 F.2d 1247, 1249 (9th Cir. 1976).

Far from being a "practical, prophylactic measure to protect the trial date, ensure the fair adjudication of the allegations, and provide fair notice," a discovery order would only needlessly complicate litigation by layering inconsistent standards on top of the binding Ninth Circuit law. For instance, Behm nowhere offers any carve-out for material that does not exist or has not yet been acquired. *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (the government "has no obligation to produce information which it does not possess or of which it is unaware").

Nor does he offer any explanation for why this Court should decline to examine purported late disclosures on a case-by-case basis or why the existing standards—set by the Ninth Circuit—are insufficient. For instance, if there is a violation of Rule 16, the Ninth Circuit has instructed district courts to fashion a remedy no "harsher than necessary to accomplish the goals of Rule 16." *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983). That analysis depends heavily on (among other factors) "a showing of prejudice." *United States v. Espericueta Reyes*, 631 F.2d 616, 623 (9th Cir. 1980). If Behm's response is that this Court would continue to engage in this analysis, then his requested order has no purpose. And if Behm's response is that this Court should disregard this inquiry, then he invites the Court to ignore Ninth Circuit law.

In short, Behm's requested order is unwarranted, both as a general matter and under the particular circumstances of this case. His motion should be denied.

---

[2] However, as is customary in this district, the United States intends to produce Jencks material a reasonable time prior to trial, as determined by the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.      Conclusion**

      Behm's motions should be denied.

DATED:  April 27, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*Ajay Krishnamurthy*
COLIN SAMPSON
AJAY KRISHNAMURTHY
Assistant United States Attorneys