UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-cr-00321-EMC-1 |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| DALE BEHM, et al. | |
| Defendants. | |

## I.     TRIAL DATE & LENGTH OF TRIAL

Jury selection shall take place on October 6, 2023.  Counsel shall be present in the Courtroom at 8:00 a.m.  Screening of questionnaires for prospective jurors who obviously cannot serve shall be held via virtual hearing on October 4, 2023 at 10:00 a.m.

The jury trial shall begin on October 10, 2023.  The trial days are: October 10-11, 16-18, 20, 25-26, and 30-31 and November 1-3.  (Thursdays are dark.)  Trial shall last from 8:30 a.m. to 2:00 p.m. on each day.  On all trial days counsel shall be present in the Courtroom at 8:00 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

The length of the trial is expected to last not more than thirteen court days.  The parties will endeavor to abide by this estimate.  The Court will prompt the parties if there is a failure to conduct trial efficiently.

## II.     TRIAL PROCEDURES

Given the number of witnesses and exhibits, the Court imposes additional trial procedures. A party(ies) must give the opposing party(ies) at least forty-eight (48) hours' notice of witnesses it intends to call, exhibits it intends to use, and/or demonstratives it intends to use.  Saturdays and

Sundays do not count.  Thus, *e.g.*, for a Monday trial day that starts at 8:00 a.m., a party must give the opposing party notice by 8:00 a.m. on Thursday.

If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same day of notice, and the parties shall meet and confer to see if they can resolve their differences.  If they cannot, then they shall **file** with the Court a joint statement twenty-four (24) hours in advance of the relevant trial day.  In short, the Court requires a full day to resolve any objections.

### III.     WITNESSES

A.     U.S. Witness List

The government has identified the following individuals as witnesses it may call in its case-in-chief.  *See* Docket Nos. 271, 285 (U.S. Witness List and Amended Witness List).

(1)     Villfredy Alvarenga.

(2)     Sarah Stroth.

(3)     Joe Lawhun.

(4)     Mercy Yao.

(5)     Raymond Fung.

(6)     Margaret Palacios.

(7)     Eric Chen.

(8)     Susan Kao.

(9)     Yu Hao "Pamela" Chen.

(10)     David Burbidge.

(11)     Tracy Hudak.

(12)     Jay Charkow.

(13)     Mary Ann Morris.

(14)     Rolando Jocson.

(15)     Karen Cheung.

(16)     Sonia Elmalis.

(17)     Young Heng "Colin" Liang.

(18)     Edmond Wong.

(19)   Representative and custodian of CMA GCM Group.

(20)   Representative and custodian of Mitsui-OSK Lines, Inc.

(21)   Anthony Nogueras.

(22)   Barry "Chris" Vines.

(23)   Byron Ubernosky.

(24)   Arthur Van Nostrand, Jr.

(25)   James Dougherty.

(26)   Michael Garofola.

(27)   Representative and custodian of J.M. Rogers, Inc.

(28)   Allisyn McDonald.

(29)   Representative or custodian of Google, LLC.

(30)   J. Christina Allen.

(31)   Amjad Qaqish.

(32)   Benjamin Kurko.

(33)   Altrinette Salsedo.

(34)   Barry Harsa.

(35)   Bryan Pangelinan.

(36)   Justin Fletcher.

(37)   Viktoriya Pesnya.

(38)   Search warrant finders/IRS Special Agents, including Special Agents Miramontes and Coleman.

(39)   Representative or custodian of records for Microsoft, Inc.

(40)   Representative or custodian of records for Google, Inc.

(41)   Representative or custodian of records for JP Morgan Chase Bank.

(42)   Representative or custodian of records for East West Bank.

(43)   Representative or custodian of records for Icon Bank.

(44)   Representative or custodian of records for Integrity Bank.

(45)   Representative or custodian of records for Independent Bank.

(46)     Representative or custodian of records for First Financial Bank.

(47)     Representative or custodian of records for Bank of America, N.A.

(48)     Representative or custodian of records for Wells Fargo Bank, N.A.

(49)     Representative or custodian for Southern Home Builders Development.

(50)     Representative or custodian for TaylorMaurer.

(51)     Representative or custodian for Calsak Corporation.

(52)     Representative or custodian of records for the Texas Secretary of State.

B.     Mr. Behm's Witness List

Mr. Behm has identified the following individuals as witnesses he may call in his case-in-chief. *See* Docket No. 270 (Behm Witness List).

(1)     Villfredy Alvarenga.

(2)     David Burbidge.

(3)     Brian Henkels.

(4)     Susan Kao.

(5)     Joshua Stanka.

(6)     Sarah Stroth.

(7)     Mercy Yao.

(8)     Margaret Palacios.

C.     Mr. Clark's Witness List

Mr. Clark has identified the following individuals as witnesses he may call in his case-in-chief. *See* Docket No. 275 (Clark Witness List).

(1)     Karl Drefke.

(2)     Ron Lovett.

(3)     Yvette Clak.

(4)     Joshua Stanka.

(5)     Kelly Thomas.

(6)     Jay Van Wart.

(7)     David Burbidge.

1    (8)    Michael Garofola.

2    (9)    Art Van Nostrand.

3    (10)    Buddy Van Nostrand.

4    (11)    Dennis Bosworth.

5    (12)    Chris Vines.

6    (13)    John Rogers.

7    (14)    Bryne Irvine.

8    (15)    Scott Murphy.

9    (16)    Chad Faucet.

10    (17)    Jeff Van Wart.

### IV.    MOTIONS IN LIMINE AND RELATED MOTIONS

A.    U.S. Motions in Limine (Docket No. 269) and Motion to Exclude Expert (Docket No. 273)

1.    MIL No. 1

In the first motion in limine, the government moves for a ruling that prior statements made by each defendant are admissible if it is offered against him by the government.  *See* Fed. R. Evid. 801(d)(2)(A) (providing that a statement made by a party-opponent is not hearsay).

In his opposition, Mr. Behm makes three points:

(1) Rule 801(d)(2)(A) only establishes that his statements (if offered by the government against him) are not hearsay.  That does not mean that the statements are thereby admissible because there may be other rules of evidence that bar admission – *e.g.*, Rule 402 and Rule 403.

(2) Rule 801(d)(2)(A) only makes Mr. Behm's statements admissible as to him; it does not make Mr. Clark's statements admissible as to Mr. Behm.  Thus, if statements by Mr. Clark are admitted, there must be a "limiting instruction stating the jury cannot consider those statements against Mr. Behm for any reason."  Behm Opp'n at 2.

(3) The government has indicated that it will seek to introduce as evidence "Defendants' oral statements to and in the presence of law enforcement in 2019."

5

United States District Court
Northern District of California

Mot. at 2.  But this gives rise to a constitutional issue – specifically, the Sixth Amendment's prohibition against the admission of testimonial hearsay in the absence of cross-examination."  Behm Opp'n at 2.

Mr. Behm's first argument is valid.  The Court affirms, however, that a statement by a party-opponent as to him is not inadmissible as hearsay.

Mr. Behm's second argument is valid only in part.  It is true that a statement by a defendant is nonhearsay only as to him.  However, Rule 801(d)(2)(E) provides that a statement offered against an opposing party is not hearsay if the statement "was made by the party's coconspirator during and in furtherance of the conspiracy."[1]  Fed. R. Evid. 801(d)(2)(E).  This may be a basis for, *e.g.*, a statement by Mr. Clark (or other alleged coconspirators such as Mr. Stanka) to come in against Mr. Behm.  The Court has ordered the parties to provide briefing on the Rule 801(d)(2)(E) issue.  (The government's offer of proof shall be filed by September 12, 2023; Defendants' response is due on September 15, 2023.)

As for the third argument,

> [t]he Confrontation Clause provides that "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."  But "only statements whose 'primary purpose' was testimonial trigger the constitutional requirement."  Testimonial statements resemble "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  Examples can include affidavits, depositions, prior testimony, or police interrogation.
>
> To assess whether statements are testimonial, we apply a "'primary purpose' test."  We ask whether out-of-court statements "result from questioning, 'the primary purpose of [which was] to establish or

---

[1] At least some courts have held that "[a]dmission . . . is not contingent upon the finding of an unlawful combination.  Rather [some courts] have held that, despite its use of the word 'conspiracy,' Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise."  *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009); *see also United States v. Layton*, 855 F.2d 1388, 1399 (9th Cir. 1988), ("Rule 801(d)(2)(E) applies to statements made during the course and in furtherance of any enterprise, whether legal or illegal, in which the declarant and the defendant jointly participated."), *overruled on other grounds by Territory of Guam v. Ignacio*, 10 F.3d 608, 612 n.2 (9th Cir. 1993); *United States v. Peralta*, 941 F.2d 1003, 1007 (9th Cir. 1991) ("In *United States v. Layton*, we held that statements made by a party to an agreement were admissible under Rule 801(d)(2)(E), notwithstanding the fact the venture could not be prosecuted as a criminal conspiracy because it had a lawful objective.").

6

> prove past events potentially relevant to later criminal prosecution,'" and whether they are "'functionally identical to live, in-court testimony,' 'made for the purpose of establishing or proving some fact' at trial." "[W]e objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties."

*United States v. Latu*, 46 F.4th 1175, 1180 (9th Cir. 2022). *See, e.g.*, *United States v. Baines*, 486 F. Supp. 2d 1288, 1299-1300 (D.N.M. 2007) (coconspirators' statements made in response to "structured police questioning by a uniformed police officer," while they were detained by him at border patrol checkpoint, were testimonial and therefore could not be admitted without violating defendant's confrontation rights; "[a] reasonable person in the position of Fuller and Johnson would objectively foresee that his or her statement might be used in the investigation or prosecution of a crime"). In light of the authority above, there may be Confrontation Clause issues to the extent the government wishes to introduce against one defendant evidence of statements made by the other defendant to law enforcement. Absent such circumstance, the right of confrontation does not apply. The Court defers ruling, however, since the parties have not pointed it to any specific evidence to evaluate.

2.   <u>MIL No. 2</u>

In the second motion in limine, the government moves for a ruling barring Defendants from introducing as evidence their own statements. The government argues that Defendants cannot rely on the party-opponent rule in Rule 801(d)(2)(A) because they would be offering the statements in their own defense (*i.e.*, they are not party-opponents).

The Court agrees that Defendants cannot rely on the party-opponent rule. However, Defendants are correct that the Court cannot make a ruling in a vacuum – *e.g.*, a statement made by a defendant may not constitute hearsay if not offered for the truth of the matter asserted. Also, there may be exceptions to hearsay that apply. *See* Behm Opp'n at 3 (pointing to, *e.g.*, exceptions to the hearsay rule under Rule 803(3) and (5) (then-existing condition and recorded recollection, respectively)).

Furthermore, as Defendants point out, the government's interpretation of Rule 106 is problematic. Rule 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any

other writing or recorded statement – that in fairness ought to be considered at the same time."

Fed. R. Evid. 106.  According to the government, "[t]he rule of completeness' does not permit

Defendants to introduce excerpts of recorded statements" made by them.  Mot. at 3.  As

Defendants note, the Ninth Circuit addressed the intersection of Rule 106 and Rule 802 (which

generally prohibits hearsay) in *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021).  The court

explained as follows:

> In *United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996), we
> explained that the rule of completeness codified in Rule 106 renders
> additional portions of a complete document or recording relevant
> when the opposing party distorts the meaning of the document or
> recording by introducing misleading excerpts into evidence.  At the
> same time, we also held that the rule of completeness does not
> compel the admission of inadmissible hearsay evidence simply
> because such evidence is relevant to the case.
>
> When Rule 106 and Rule 802 collide, the critical inquiry for the trial
> court is the purpose for which the evidence is offered.  Portions of a
> document or recording are admissible under Rule 106
> *notwithstanding the bar on hearsay evidence when offered "to
> correct a misleading impression in the edited statement"* introduced
> by an opposing party.  In the interrogation context, for example, we
> have held that Rule 106 provides for the admission of additional
> portions of a defendant's statement when the prosecution offers a
> redacted version that "distorts the meaning of the statement,"
> "excludes information substantially exculpatory of the declarant," or
> "excludes portions of a statement that are . . . explanatory of [or]
> relevant to the admitted passages."  By contrast, hearsay evidence is
> evidence offered "to prove the truth of the matter asserted."  There is
> no conflict between evidence introduced under the rule of
> completeness and the bar on inadmissible hearsay because the
> former serves the purpose of correcting a distortion created by an
> opposing party's misleading proffer of part of a document or
> recording, while the latter serves the purpose of barring introduction
> of hearsay evidence proffered for its truth.

*Id.* at 715 (emphasis added); *see also United States v. Sparks*, No. 21-cr-00281-VC-1, 2022 U.S.

Dist. LEXIS 209613, at *5 (N.D. Cal. Nov. 18, 2022) ("'[T]he best application of Rule 106, in the

Court's view, is that a defendant may not seek to introduce additional portions of their prior

statements in their own case (because that would involve the introduction of hearsay statements)

but they may, consistent with the language of Rule 106, 'require the introduction' by the

government of portions of a statement that are necessary to prevent the statements proffered by the

government from being misleading.'"); *United States v. Kail*, No. 18-cr-00172-BLF-1, 2021 U.S.

1   Dist. LEXIS 14635, *9 (N.D. Cal. Jan. 26, 2021) ("While the Court generally agrees with the

2   Government that Kail may not introduce his own out of court statements pursuant to Fed. R. Evid.

3   801, it recognizes that this broad rule must be considered in tandem with the fact that the

4   Government may not present statements that cast reality in an objectively false light.").

5   Accordingly, the Court generally agrees that Defendants cannot rely on the party-opponent

6   rule but there may still be instances in which a statement is deemed nonhearsay or a hearsay

7   exception is applicable; also, Defendants may be able to introduce evidence of their own

8   statements under Rule 106 where appropriate.

9          3.    <u>MIL No. 3</u>

10   In the third motion in limine, the government argues that certain "other acts" by

11   Defendants should not be excluded because that conduct is inextricably intertwined with the

12   crimes charged.  Alternatively, the government argues that the "other acts" evidence is admissible

13   under Rule 404(b) – *i.e.*, "probative of [a] Defendant's motive, plan, preparation, and lack of

14   mistake in committing the crimes charged."  Mot. at 5.  In the motion, the government identifies

15   only three "other acts"[2]:

16       (1) Evidence that Mr. Clark "lied" to TPP employees "about the financial condition of

17              the company and the reason for its closure in July 2017 before [he] opened

18              Hammer Trading to continue the drawback scheme with the same clients."  Mot. at

19              5.

20       (2) Evidence that Mr. Clark "secretly employed" Mr. Stanka in 2018 and "paid him

21              and his family members in ways to avoid collection of [Mr.] Stanka's debts by the

22              Internal Revenue Service or [Mr.] Stanka's bankruptcy estate."  Mot. at 5.

23       (3) Evidence that Mr. Behm "falsely certified" to N.F. Stroth (PRT's drawback broker)

24              that "the material underlying the drawback claims submitted to United States

25              Customs [was] commercially interchangeable with the imported merchandise upon

26              which [PRT] paid customs duties."  Mot. at 5.

27

28   [2] The government suggests that there could be more other acts by using the term "including."  The Court addresses only the specific other acts identified by the government here.

United States District Court
Northern District of California

United States District Court
Northern District of California

Though the government appears to have made an error in its brief (cutting and pasting an argument about a Twitter case), the Court concludes that the evidence above is admissible.  As the government points out, "[e]vidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.'"  *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).  The Ninth Circuit has

> recognized two categories of evidence that may be considered "inextricably intertwined" with a charged offense and therefore admitted without regard to Rule 404(b).  First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge."  Second, prior act evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."

*United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).  With respect to the first category, the prior act cannot be "too far removed" in, *e.g.*, "time [or] circumstance" or else it cannot be fairly deemed to be part of a "'single criminal episode.'"  *Id.*

In the instant case, the first two pieces of evidence above fall into the second category.  Part of the narrative against Mr. Clark is his alleged wrongdoing through two different companies – first, TPP and then Hammer Trading.  In addition, part of the narrative against Mr. Clark is that he and Mr. Stanka worked together in the asserted scheme to defraud.  The third piece of evidence seems to fall into both categories.  Mr. Behm allegedly made false certifications so that false drawback claims could be made.

### 4.    MIL No. 6[3]

In the sixth motion in limine, the government asks the Court to rule that certain identified records are self-authenticating and therefore not hearsay.  "Alternatively, the government moves . . . for an order that the records are admissible under Rule 807," the residual hearsay exception.  Mot. at 6.  The records at issue are bank records (*e.g.*, Independent Bank, JP Morgan Chase Bank, Wells Fargo, East West Bank, Icon Bank, Bank of America) and subscriber business records from

---

[3] There is no MIL No. 4 or 5 in the government's brief.

Adobe, Inc. *See* Mot. at 6.

Mr. Clark has not opposed the motion in limine.[4]  In his brief, Mr. Behm expressly states that he does not oppose "the admission of bank records as certified business records pursuant to Fed. R. Evid. 902(11) and 803(6), so long as both parties are permitted to introduce exhibits of such records in this manner."  Behm Opp'n at 7.  Mr. Behm does not make a comment on records from Adobe.

Taking into account the above, the Court grants the motion as unopposed.  The documents at issue are deemed authentic and nonhearsay.  To the extent Defendants may have other objections to the evidence (*e.g.*, relevance), they may raise those objections as needed at trial.

The Court orders the parties to meet and confer on other custodial witnesses named by the government to see if they can reach further agreement that would obviate the need for the witnesses to testify and sponsor exhibits.  The parties shall meet and confer by September 15, 2023, and jointly report back on the results of their meet and confer by September 19, 2023.

5.    MIL No. 7

In the seventh motion in limine, the government moves for an order admitting summaries of evidence into trial.

- Summaries of drawback claims filed with CBP and summaries of drawback payments made by CBP (Exhibit 953).
- Summaries of bills of lading (*i.e.*, shipping information for shipments of containers) (Exhibit 951).
- Summaries of altered bills of lading (Exhibit 952).

The government acknowledges that no final exhibits have been submitted to the Court or to Defendants.  It states that it cannot provide "final summaries . . . until shortly before they are offered because they will incorporate evidence admitted at trial."  Mot. at 9.

Summaries of evidence are permitted under the Federal Rules of Evidence.  Rule 1006

---

[4] The Court acknowledges that Mr. Clark raised hearsay objections to the Adobe-related exhibits (Exhibits 811-13).  However, the Court deems those objections waived based on Mr. Clark's failure to provide a substantive response to the government's motion in limine.

United States District Court
Northern District of California

1    provides:

> 2    The proponent may use a summary, chart, or calculation to prove the
> 3    content of voluminous writings, recordings, or photographs that
> cannot be conveniently examined in court.  The proponent must
> 4    make the originals or duplicates available for examination or
> copying, or both, by other parties at a reasonable time and place.
> 5    And the court may order the proponent to produce them in court.

6    Fed. R. Evid. 1006.  The rule is an exception to the best evidence rule.  *See* 6 Weinstein's Fed.

7    Evid. § 1006.02.  It is "based on the common-law rule that a party may prove the contents of

8    voluminous writings that cannot be examined in court without causing inconvenience and waste of

9    time by presenting evidence of their contents in abbreviated form."  *Id.*  "The rule recognizes that

10   charts, summaries, or calculations are not only convenient for proving the contents of voluminous

11   materials, but sometimes are the only practicable way to do so."  *Id.*

12          The Court defers ruling on the government's motion.  It appears that the government has

13   already provided draft summaries to Defendants.  If it has not, it shall promptly do so.  The Court

14   understands the government's point that the exhibits cannot be finalized because finalization

15   depends on what evidence is admitted at trial.  However, the Court expects the draft summaries to

16   be in as final a form as possible – *e.g.*, assuming the best-case scenario, from the government's

17   perspective, that all evidence related to the summaries is admissible.  The underlying documents

18   must have been made available to defendants.  The parties are ordered to meet and confer by

19   September 15, 2023.  By September 19, 2023, the parties shall jointly report back on the results of

20   their meet and confer.  If there are disputes, each party shall state its respective position.

21   However, to be clear, the Court expects the parties to resolve this dispute.

22          6.     MIL No. 8

23          In the eighth motion in limine, the government

> 24   moves for an order (A) precluding Defendants from introducing
> evidence that [they have] not produced under [their] reciprocal
> 25   discovery obligations, including under Federal Rule of Criminal
> Procedure 16(b), (B) requiring production of prior statements of
> 26   defense witnesses (other than the defendant) that relate to the subject
> matter about which the defense witness(es) will testify pursuant to
> 27   Rule 26.2 (reverse *Jencks*), and (C) precluding Defendant[s] from
> presenting any affirmative defense not properly disclosed.

28

Mot. at 9.

To the extent the government seeks the relief in (A), its motion is essentially premature. There is no indication that Defendants are not complying with their obligations under Federal Rule of Criminal Procedure 16(b).  *See, e.g.*, Fed. R. Crim. P. 16(b)(1)(A) (putting an obligation on the defendant to produce documents if they are "within the defendant's possession, custody, or control" and the defendant "intends to use the item in the defendant's case-in-chief at trial").  The fact that Mr. Behm has provided to the government only an expert report does not mean that he is not complying with his obligations.  Notably, Rule 16(b)(1)(A) covers only documents for a defendant's *case-in-chief*.

To the extent the government seeks the relief in (C), that motion also seems premature. *See also* Behm Opp'n at 10 (stating that "a defendant only has to disclose the defenses specified in Fed. R. Crim. P. 12.1-12.3 [alibi, insanity, and public authority]" and "Mr. Behm does not intend to present any of these defenses," nor does he intend to make a defense of justification or duress). The government argues still that, "although Defendants have sought to include language regarding a good faith defense, they [have] provided no disclosure or evidence to meet [their] burden with respect to that defense."  Mot. at 11.  The problem with this argument, as Mr. Behm points out, is that good faith is not an affirmative defense where the government has the burden of proving an intent to defraud (as with the wire fraud charges).  *Cf. United States v. Gorski*, 880 F.3d 27, 32 n.3 (1st Cir. 2018) (in conspiracy-to-defraud case, noting that "'[a] separate instruction on good faith is not required . . . where the court adequately instructs on intent to defraud'"); *S. Atl. P'ship of Tenn. v. Riese*, 284 F.3d 518, 531 (4th Cir. 2002) (noting that "mail fraud requires that a defendant act with specific intent to defraud," and so "'good faith, or the absence of an intent to defraud, is a complete defense to a charge of mail fraud'").

Finally, for the relief identified in (B), the government admits that Federal Rule of Criminal Procedure 26.2 provides as follows:

> *After* a witness other than the defendant has testified *on direct examination*, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their

possession and that relates to the subject matter of the witness's
testimony.

Fed. R. Crim. P. 26.2(a) (emphasis added).  The government, however, suggests that Defendants should be ordered to act now (*i.e.*, instead of waiting for trial) because (1) "[p]ursuant to the Local Rules," the government "has already produced memorandums of interviews of non-law enforcement witnesses in its possession" and (2) production by Defendants now would expedite trial proceedings.  Mot. at 10.  *But see* Behm Opp'n at 9 (asserting that "there are several non-law enforcement, non-custodian of records witnesses on the government's witness list for whom the defense has no memorandums of interviews").  In response, Defendants primarily argue that they have a right to protect their "trial strategy from premature disclosure."  Behm Opp'n at 10. Defendants suggest that ordering disclosure now – essentially, a month before trial – is premature, but it is not clear whether they would consider any disclosure prior to direct examination premature.

The Court is not unsympathetic to Defendants' position.  However, courts have ordered that reciprocal Rule 26.2 disclosures be made prior to trial.  *See United States v. Thompson*, No. CR-09-0088-FVS, 2010 U.S. Dist. LEXIS 143818, at *2-3 (E.D. Wash. May 10, 2010) (report and recommendation) ("Ordinarily, neither the defendant nor the government is required to make Rule 26.2 disclosures until after a witness has testified.  In this case, the Court has ordered the parties to make reciprocal Rule 26.2 disclosures before the trial.  Consequently, they must presently disclose all information which they ordinarily would be required to disclose at trial.").  It has the power to do so.  *Cf. United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc).  There would be efficiency in having witness statements produced prior to their testifying on direct.  The Court therefore orders Defendants to provide witness statements one full court day in advance of the first defense case-in-chief.  The Court shall depend on the government to give Defendants sufficient notice of when it will complete its case-in-chief so that Defendants can comply with the Court's requirement here.

///

///

///

14

7.      MIL No. 10[5]

In the tenth motion in limine, the government asks for "permission to exhibit a small number of documents and items during its opening arguments."  Mot. at 12.  The government does not specify which exhibits or items it would like to use, although it suggests that they will include drawback claims, banking records, and shipping documentation.  *See also* Mot. at 12 (arguing that the exhibits "will likely be admitted into evidence, as they constitute business and financial records that are independently admissible").

Mr. Clark has not opposed the motion.  Mr. Behm has, noting that he cannot comment on the motion without the government identifying the exact documents and items.  He also argues that no exhibits or items should be used unless the Court has ruled on their admissibility and unless he has specifically agreed.

If the government wishes to use any exhibits or items for opening argument, then it must disclose a list consistent with the Court's trial procedures outlined above.  The parties shall then meet and confer to see if they can reach agreement.  If there is an unresolved dispute, the parties shall present the dispute to the Court in accordance with the time table set forth above.  The Court notes that it expects this dispute to be resolved.

8.      MIL No. 11

In the eleventh motion in limine, the government moves to sequester all witnesses from trial, with two exceptions: (1) so that a witness may testify and (2) so that two case agents may be in the courtroom even when not testifying.  The two case agents are Agent Kurko and Agent Salsedo.[6]  The first exception is not in dispute.  The second exception is.

Federal Rule of Evidence 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a)      a party who is a natural person;

---

[5] There is no MIL no. 9 in the government's brief.

[6] The government appears to have made an error in its brief, also identifying "Special Agents Wu and Struble" who appear to have no connection to this case.  Mot. at 13.

15

(b)    an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;

(c)    a person whose presence a party shows to be essential to presenting the party's claim or defense; or

(d)    a person authorized by statute to be present.

Fed. R. Evid. 615.  The government argues that both case agents should be allowed to be present under Rule 615(b) and/or (c).  Defendants take the position that only one case agent should be permitted to sit at counsel table.

With respect to Rule 615(b), the advisory committee notes states that "a party which is not a natural person is entitled to have a representative present.  Most of the cases have involved allowing a police officer who has been in charge of an investigation to remain in court despite the fact that he will be a witness."  Fed. R. Evid. 615; *see also United States v. Thomas*, 835 F.2d 219, 223 (9th Cir. 1987) (holding that government's investigating officer, who testified as a witness, was properly allowed to sit at counsel table throughout the trial because Rule 615 does not exclude an officer of a party which is not a natural person designated as its representative).

Weinstein's treatise on evidence notes the following with respect to the number of representatives:

> It is not clear from the text or legislative history of the rule whether more than one representative may be designated.  As a result, there is some variation in the holdings and practice of the various circuits.  Some courts permit only a single representative, some courts permit more than one representative when there is a practical reason justifying the use of more than one representative, and some courts impose no limitation on the number of representatives.  In addition, it is the practice of some courts to allow multiple representatives to remain for most testimony but to exclude the other representatives when one representative is testifying . . . .

> Given the liberality of joinder rules, it may be impossible to find one person within the structure of a large entity who has all the information needed to assist the attorney; and the court should allow some flexibility in designation consistent with the objectives of the rule.  Unnecessary exclusion of one of a number of representatives may slow down the trial by requiring continuances so an attorney can consult with persons outside the courtroom.  There must be wide discretion in the trial judge to allow multiple representatives.

> Even if only a single designated representative is permitted, the

16

party may attempt to show under subdivision (c) of the rule that the second agent was "essential" to the presentation of its case . . . .

4 Weinstein's Fed. Evid. § 615.04[2][b].

With respect to (c), Weinstein's notes that,

> [a]lthough the exemption is phrased in the singular, courts of appeals tend to interpret the rule to hold that a trial court has the discretion to exempt more than one witness as essential to the preparation of the party's case. This practice seems appropriate, since it is not difficult to imagine a complex case in which several witnesses could reasonably be characterized as essential.

*Id.*; *see also* Fed. R. Evid. 615, advisory committee notes (noting that the category in (c) "contemplates such as persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation").

To the extent that the issue is whether more than one representative may be designated under Rule 615(b), the government has the better position.[7]  Weinstein's essentially favors that approach.  The Second Circuit's reasoning in favor of this approach is also persuasive:

> This Circuit has not yet addressed whether more than one agent may be exempted pursuant to each subprovision of Rule 615. We have only noted in dicta that two agents could appropriately be exempted from the rule, one under the second subprovision [(b)] and the other under the third [(c)].  *United States v. Rivera*, 971 F.2d 876, 889-90 (2d Cir. 1992).

> One might interpret the language of Rule 615, as well as the advisory notes, as suggesting that the drafters contemplated the exemption of only one person for each subprovision.  For example, the exemptions in the Rule are described in the singular and the advisory notes discuss the government's frequent use of "*a police officer*" or "*an investigative agent*" to assist with its case.  Fed. R. Evid. 615, Advisory Committee Notes (emphasis added); *cf. Pulley*, 922 F.2d at 1286 (finding no reason to "convert the singular into the plural" in interpreting Rule 615).  Nevertheless, we would be reading the language too narrowly to assume that the use of the singular implies that the drafters intended to allow only one exemption per provision.  The Rule and the Notes say nothing further to indicate that, in a case in which two agents are "essential to the presentation of the party's cause," for example, only one could be exempt from the opposing party's request to sequester the agents.

---

[7] The government points out in its brief opposing Mr. Behm's motions in limine that this Court permitted more than one case agent at counsel table in *Nelson* and *Foakes*.  *See* Opp'n to Behm MILs at 3.

1

2

3

4

5

6

7

8

9

10

> While we would expect it to be the rare case when a district judge exempts more than one witness under a particular subprovision of Rule 615, we hold that a district court judge has discretion to do so. The advisory notes to Rule 615 do state that the Rule treats the matter of sequestration as "one of right," as opposed to being "committed to the [trial judge's] discretion." While we interpret this, consistent with the Rule's use of the word "shall," to require the sequestration of witnesses upon a party's request, we read the caselaw to provide the judge with discretion in determining whether the witness in question falls within one of the Rule 615 exemptions. *See United States v. Payan*, 992 F.2d 1387, 1394 (5th Cir. 1993) (The trial judge has discretion to determine how many witnesses may be excused from sequestration.); *Rivera*, 971 F.2d at 889 ("It is within a trial court's discretion to exempt the government's chief investigative agent from sequestration . . . ."). Because the Rule does not expressly limit to one the number of exemptions per provision, we conclude that this discretion extends to deciding whether, in a particular case, more than one witness should be exempt under a particular subprovision.

11 | *United States v. Jackson*, 60 F.3d 128, 134-135 (2d Cir. 1995).

12 |        Accordingly, the Court concludes that it is possible for more than one case agent to be

13 | present under Rule 615(b) – or for one to be present under Rule 615(b) and another under Rule

14 | 615(c). As for whether, in the case at bar, two case agents are needed for purposes of Rule 615(b)

15 | or whether the second agent qualifies under Rule 615(c), the Court finds that the government has

16 | sufficiently met its burden. The government explains that "[e]ach of these agents represents a

17 | different agency that participated in the investigation leading to this indictment" (Agent Kurko is

18 | from the IS and Agent Salsedo from HIS), and "[e]ach agent handled different aspects of the

19 | investigation." Opp'n to Behm MILs at 2. In addition, given the number of exhibits alone, it is

20 | reasonable to have both agents at counsel table for management and presentation of the

21 | government's case.

22 |        9.   <u>MIL No. 12</u>

23 |        In the twelfth motion in limine, the government moves to exclude "any reference by the

24 | defense to defendant's potential sentence during all phases of the trial." Mot. at 13. The

25 | government asserts that this prohibition should extend to even more subtle references such as "this

26 | case has serious consequences for the defendant" or "the defendant's liberty is at stake in this

27 | trial." Defendants do not oppose the motion, although Mr. Behm notes that he believes a

28 | statement such as "this is a serious case" is not one that refers to punishment. *See* Behm Opp'n at

United States District Court
Northern District of California

11.

This motion appears to be moot given the lack of an opposition by Defendants.  To the extent the government may see a problem with the statement "this is a serious case," the Court rejects that position.  Charging someone with conspiracy to defraud the United States is a serious case.  Moreover, the Court notes that the jury will be instructed at the close of the case as follows: "The punishment provided by law for this crime is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt."  9th Cir. Model Instruction No. 6.22.  The parties have stipulated to this instruction.

10.  Motion to Exclude Expert

Finally, the government has moved for exclusion of Mr. Behm's expert, George Tuttle.  "According to [Mr.] Tuttle's CV, he is an attorney with 'experience advising clients and litigating issues relating to Customs and trade matters,' including 'drawback.'"  Mot. at 1.

Mr. Behm disclosed Mr. Tuttle on August 11, 2023.  Under Federal Rule of Criminal Procedure 16(b)(1)(C), the disclosure was required to contain the following:

- a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii).  According to the government, the disclosure for Mr. Tuttle failed to state "bases and reasons" for Mr. Tuttle's opinions and therefore should be excluded.  The government acknowledges that Mr. Tuttle purports to have experience to substantiate his opinions – *e.g.*, that "it is 'standard' or 'typical' for drawback clients . . . to rely on others – such as trading partners or brokers – for the accuracy of the information that they provide to CBP"[8] –

---

[8] *See also* Supp. Disclosure at 2 (indicating that the initial disclosure advised Mr. Tuttle will testify that, "'typically, the drawback trading provider is expected to provide the importer/claimant

but complains that Mr. does not specify what his experience is; there is no "citation to specific instances, documents, cases, or industry participants."  Mot. at 2, 4.

Mr. Behm disputes that his initial disclosure was deficient.  However, he has now provided a supplemental disclosure to cure any prejudice that the government might otherwise have suffered.  *Cf.* Fed. R. Crim. P. (b)(1)(C)(ii) (with respect to expert disclosures, noting that the court must set a time for the disclosures – "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence").  The supplemental disclosure states that Mr. Tuttle's experience includes the following:

- "advising clients on customs compliance matters, including on structuring duty drawback agreements";

- "drafting drawback agreements on behalf of drawback applicants";

- "advis[ing] clients on how to legally protest or contest the administrative denial of a drawback claim by CBP";

- "advis[ing] drawback parties, including exporters, and importers, or other filers, on their responsibilities when filing for drawback";

- "advising licensed customs brokers about filing drawback claims" and about "their responsibilities to exercise responsible supervision and care when filing drawback claims";

- being a member of the American Bar Association's Section on International Law and co-chair of the American Bar Association's Customs Laws Committee;

- as part of professional development, "attend[ing] and participat[ing], on an annual basis, in webinars, seminars, and conferences that include speakers and experts from both U.S. Customs and Border Protection and industry practitioners (including customs brokers and attorneys) on topics such as compliance with

---

with information about what documentation is necessary to support the drawback claims and is responsible for providing the importer with the correct documentation from the exporter'"; also, "'[Mr. Tuttle] will testify that the way [Mr.] Stanka structured these agreements is less common because generally the trading provider working with the exporters and importers is the claimant and as such would be the party who bears liability for the transaction'").

United States District Court
Northern District of California

1    customs laws and regulations, entry and drawback claims, and Customs Broker

2    responsibilities";

3    • as part of professional development, "analyz[ing] CBP administrative and judicial

4    decisions that interpret and apply the drawback laws and regulations."

5    Supp. Disclosure at 1-2.

6        In light of the supplemental disclosure, the Court denies the motion to exclude Mr. Tuttle.

7    The Court also rejects the government's argument that, even if disclosure is not an issue, his

8    testimony should be excluded as irrelevant and unfairly prejudicial.  *See* Mot. at 4 (citing Rules

9    401 and 403).  Mr. Tuttle's testimony that it is standard for a drawback client to rely on others has

10   probative value as to Mr. Behm's alleged intent to defraud the United States.  The balancing test

11   under Rule 403 requires that unfair prejudice "substantially outweigh[]" the probative value of the

12   testimony.  Fed. R. Evid. 403.  The government has not shown that any prejudice would

13   substantially outweigh probative value.  To the extent the government has a concern that the jury

14   might somehow see Mr. Tuttle as being a legal expert (given that he is an attorney), the Court is

15   open to giving a limiting instruction, but it puts the burden on the government to request such an

16   instruction at the appropriate time.

17       There is, however, one issue related to Mr. Tuttle where the Court agrees with the

18   government.  Apparently, Mr. Tuttle will testify that

19       "N.F. Stroth [who did work for PRT] has a reputation in the industry
         as a competent and a well-respected customs broker."  Mr. Tuttle
20       first became professionally acquainted with N.F. Stroth Customs
         Brokers in the 1980s, and the firm has worked with N.F. Stroth on
21       multiple occasions to support drawback claims for mutual clients.
         Mr. Tuttle cannot recall an occasion where these clients were not
22       pleased with the services provided by N.F. Stroth Customs Brokers
         and does not recall an occasion [where] CBP rejected a claim
23       prepared and filed by N.F. Stroth that involved a misinterpretation
         of the drawback law or regulations.  Mr. Tuttle recommends them to
24       his clients interested in filing for drawback because of his
         experiences working with them.

25

26   Supp. Disclosure at 2-3.  With respect to this testimony, Mr. Tuttle is arguably not an expert or at

27   least his testimony would not seem to constitute expert testimony under Rule 702.  *See* Fed. R.

28   Evid. 702 (providing that "[a] witness who is qualified as an expert by knowledge, skill,

21

experience, training, or education may testify in the form of an opinion or otherwise if," *inter alia*, the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is the product of reliable principles and methods").

Furthermore, "an expert witness can never vouch for the credibility of another witness because this would impermissibly encroach[] upon the jury's vital and exclusive function to make credibility determinations and fail to assist the trier of fact' as required by Rule 702." *United States v. Jones*, No. 21-5079, 2023 U.S. App. LEXIS 15966, at *7 (10th Cir. June 26, 2023) (internal quotation marks omitted); *see also United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("The jury must decide a witness' credibility.  An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility.").  Although here Mr. Tuttle is not directly opining on N.F. Stroth's credibility, that is ultimately the effect.  This is different from the above discussed testimony which provides background which ultimately have probative value in assessing credibility.  Here the nexus to vouching is far closer.  Thus, there is a legitimate Rule 403 concern here.  Mr. Behm effectively conceded such at the final pretrial conference and indicated that he would not pursue this line of testimony with Mr. Tuttle.

B.    Mr. Behm's MILs (Docket No. 260) and Motion to Preclude Coconspirator Statements Under Rule 801 (Docket No. 279)

1.    MIL No. 1

The issue raised Mr. Behm's first motion in limine (*i.e.*, whether more than one case agent may sit at counsel table) has already been addressed above in the government's MIL No. 11.

2.    MIL No. 2

In the second motion in limine, Mr. Behm asks that the Court exempt two individuals associated with his defense from the sequestration order.  Those persons are: (1) a defense investigator (Fredrick Anderson) and (2) the defense expert Mr. Tuttle.  *See* Fed. R. Evid. 615(c) (noting that a sequestration order does not exclude from trial "a person whose presence a party shows to be essential to presenting the party's claim or defense").

The government does not appear to oppose the request for the defense investigator to be

present.  However, it does argue that Mr. Tuttle's presence is not needed.  The Court rejects the government's position.  First, the advisory committee notes reflect that an expert is precisely the type of person who falls within the category identified in Rule 615(c).  *See* Fed. R. Evid. 615, advisory committee notes (noting that the category in (c) "contemplates such as persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation").  Second, Mr. Behm reasonably argues that "facts elicited during the trial and the testimony of government agents and any government expert witnesses will inform his opinion and will almost certainly include assertions the defense will need to rebut."  Mot. at 3.  The government's response – that Mr. Tuttle "has not been noticed to testify about or summarize facts presented at trial" – does not make sense.  Opp'n at 3.  Even if Mr. Tuttle has not been noticed to testify about certain facts, that does not mean that the information presented will not be relevant to an opinion he expresses, if only, *e.g.*, in response to a hypothetical.

       3.    <u>MIL No. 3</u>

       In the third motion in limine, Mr. Behm asks the Court to designate all government witnesses as under a defense subpoena, *i.e.*, so that they will not be unavailable should the defense later need to recall them.  The government opposes the motion, stating as follows:

> The Court has scheduled two weeks for this trial, and approximately half of the United States' witnesses will be traveling from out of the district to testify.  Keeping all of the United States' witnesses under defense subpoena will impose a significant cost on these witnesses and disrupt their lives.  It also permits the defense to fail to disclose all of the witnesses for their case-in-chief.  The defense has the ability to subpoena its witnesses if needed, or should meet and confer with the government regarding which witnesses it requests remain under subpoena, and the remainder should be excused in due course.

Opp'n at 4.

       The government's initial position is too rigid; however, the parties shall meet and confer to see if they can reach an agreement on government witnesses being available to testify.  The parties shall meet and confer by September 15, 2023, and shall jointly report back on their efforts on September 19, 2023.

United States District Court
Northern District of California

4.      MIL No. 4

In the fourth motion in limine, Mr. Behm asks the Court to conduct an in camera review of Mr. Stanka's pretrial services records.  Mr. Behm acknowledges that Mr. Stanka is not listed as a government witness but argues that, if that should change or "to the extent the government seeks to admit some of Mr. Stanka's statements at trial," this relief should be provided.  This is because the records (in particular, those related to Mr. Stanka's substance abuse history) could shed some light on Mr. Stanka's credibility.  *See United States v. Alvarez*, 358 F.3d 1194, 1207-08 (9th Cir. 2004) (stating that, consistent with *Brady*, defendant "was entitled to an in camera review of the probation files of critical coconspirator witnesses, and that the district court should have released all material therein that bore on the credibility of such significant witnesses").  Note that Mr. Stanka is listed as a witness in both of the defense witness lists.

In its opposition brief, the government states that it takes no position on whether the Court should conduct an in camera review.  In light of the nonopposition, the Court shall conduct an in camera review.

5.      MIL No. 5

In the fifth motion in limine, Mr. Behm argues that two case agents – Agent Kurko and Agent Mark Lope – should only be allowed to testify as lay witnesses, and not expert witnesses, because they were not identified as experts in the government's Rule 16 disclosures.  Mr. Behm's concern is that the government will try to use the agents as a means to provide expert testimony about drawbacks.  *See* Mot. at 6 (noting that both agents provided testimony related to drawbacks in their grand jury testimony).

As an initial matter, the Court notes that part of this motion is moot because the government has not designated Agent Lope as a witness.

As to Mr. Behm's challenge to Agent Kurko, the government indicates that it will have *other* individuals who will provide testimony about, *e.g.*, what a drawback duty is, what a bill of lading is, etc.  *See* Opp'n at 4-5 (noting that a customs import specialist (Ms. Allen) will "define and apply the United States Harmonized Tariff Schedule for certain commodities listed in 19 U.S.C. § 1313(p), [*i.e.*,] the operative provision allowing refunds ('drawback') of certain

substituted merchandise"; also, the government has on its witness list "employees of United States Customs involved in drawback, representatives of shipping lines, and employees of drawback claim preparers to provide testimony about their businesses, records, and roles in the drawback process").  The government further argues that Agent Kurko will be testifying about the crimes he investigated which does not make him an expert witness even if some specialized knowledge may be implicated.  The government's latter point is supported by case law authority.  *See, e.g.*:

- *United States v. Godette*, No. 22-4007, 2023 U.S. App. LEXIS 316, at *13 (4th Cir. Jan. 6, 2023) ("Under Rule 701, a lay witness may offer an opinion that is rationally based on [his] perception.  [I]f a witness's firsthand observations are common enough and require applying only a limited amount of expertise, they may fairly come in under Rule 701 as lay testimony.  And experience-derived police testimony concerning criminals' typical modi operandi during a drug transaction may qualify as lay opinion under Rule 701.") (internal quotation marks omitted).

- *United States v. Lomas*, 826 F.3d 1097, 1107-1108 (8th Cir. 2016) ("When 'a law enforcement officer is not qualified as an expert . . . [his] testimony is admissible as lay opinion only when [he] is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred.'").

- *United States v. Losch*, 603 F. Supp. 3d 795, 798 (D. Ariz. 2022) ("[L]ay witnesses may testify to particularized knowledge by virtue of [their] experience[s] even if the subject matter is specialized or technical[,] because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.") (internal quotation marks omitted); *id.* at 798 ("Without question, the engineers have special knowledge, skill, experience, training[, and] education.  But none of the proposed testimony requires the engineers to apply reliable principles and methods to the facts of this case, as contemplated by FRE 702.  The engineers have personal knowledge of *what* they told Losch [the defendant], *when* they told him, and *why* they told him those things.") (internal

United States District Court
Northern District of California

1   quotation marks omitted; emphasis in original).

2   • *United States v. Rodriguez-Landa*, No. 2:13-cr-00484-CAS, 2019 U.S. Dist. LEXIS

3   27793, *80-81 (C.D. Cal. Feb. 13, 2019) ("[The law enforcement officers] may all

4   testify as percipient witnesses.  They participated in the investigation and may

5   testify to that which they personally witnessed during that time.  This testimony is

6   expressly contemplated by Rule 701.").

7   • *United States v. Cutting*, No. 14-cr-00139-SI, 2017 U.S. Dist. LEXIS 154508, at

8   *16 (N.D. Cal. Sept. 21, 2017) ("The government states it does not intend to elicit

9   expert opinions from these individuals, but instead to offer percipient, factual

10   testimony about what they did during the exams, what records they reviewed and

11   why, what conclusions they reached, what regulatory actions were taken etc.  Based

12   upon this representation, the Court DENIES the motion without prejudice to

13   specific objections at the time of trial if defendants feel these witnesses are straying

14   beyond the scope of percipient witnesses.").

15   A witness can testify based on experience under FRE 701 without necessarily implicate FRE 702.

16   Accordingly, the Court rejects Mr. Behm's position.

17       6.   <u>MIL No. 6</u>

18       In the sixth motion in limine, Mr. Behm argues that the government has provided an

19   inadequate disclosure with respect to its digital forensic expert Mr. Qaqish (a retired Special Agent

20   and Computer Investigative Specialist).  As noted above, Federal Rule of Criminal Procedure

21   16(b)(1)(C) requires that an expert disclosure contain the following:

22       • a complete statement of all opinions that the defendant will
           elicit from the witness in the defendant's case-in-chief;
23

24       • the bases and reasons for them;

25       • the witness's qualifications, including a list of all publications
           authored in the previous 10 years; and
26
         • a list of all other cases in which, during the previous 4 years,
27          the witness has testified as an expert at trial or by deposition.

28   Fed. R. Crim. P. 16(b)(1)(C)(iii).  According to Mr. Behm, the government has not provided a

26

complete statement of Mr. Qaqish's opinions, nor the bases and reasons for his opinions stated.

A copy of the disclosure related to Mr. Qaqish is attached as Exhibit A to Mr. Behm's motion. The disclosure states that Mr. Qaqish will testify about, *e.g.*:

- his making digital copies of electronic devices seized pursuant to search warrants;
- his extracting metadata "associated with certain files" – *e.g.*, creation date of a file, modification date, etc.; and
- his recovery of deleted or unallocated files from the devices.

Mot., Ex. A (Qaqish Disclosure at 4). In his motion, Mr. Behm argues that the disclosure is incomplete because, *e.g.*, if the government will use Mr. Qaqish to opine about metadata associated with certain files, "the defense must be noticed about the specific files that are correlated with the metadata." Mot. at 8. However, it appears that Mr. Behm's main concern is that Mr. Qaqish will be used to link attachments to emails: "[T]he government's productions include thousands of emails referencing attachments that were not produced with the emails to which they correspond. If the government intends to offer Mr. Qaqish to establish that certain emails have certain attachments, the defense needs a disclosure identifying the specific emails and specific attachments." Mot. at 8-9.

At the final pretrial conference, the Court discussed with the parties this issue of emails and attachments. The Court ordered the parties to meet and confer and resolve the dispute among themselves. The parties shall meet and confer by September 15, 2023, and jointly report back on the results of their meet and confer by September 19, 2023. The Court expects this dispute to be resolved.

7.    MIL No. 7

In the seventh motion in limine, Mr. Behm moves to exclude evidence to a drawback claim filed in November 2013 (Claim AA6-03177293). This would include "a letter authored by Mr. Behm to Customs dated May 9, 2014 and noticed at page three of Government Exhibit 653." Mot. at 9.[9] The subject line of the May 2014 letter refers to the claim number (Claim AA6-03177293).

---

[9] At the hearing, the parties also referenced Exhibits 631 and 632 which are emails that preceded the May 2014 letter.

United States District Court
Northern District of California

1   In the letter, Mr. Behm states, *inter alia*, as follows:

2   > I understand that Micah McDonald (DHL) has been in contact with
3   > your office and has informed me that the export documentation issue
    > has been resolved.  As for information I am also including an
4   > industry report that speaks directly to recycled PET resin and the
    > many forms it is used [for] today.  PET recycled material today is
5   > the most recycled plastic worldwide and is used in many forms.  The
    > substitution material used in the export process does indeed fall
6   > under 100% recyclable Plastic, often called Plastic Scrap but better
    > known in the industry as PCR, Post Consumer Resin.

7   Ex. 653.  Mr. Behm moves for exclusion of evidence related to the November 2013 claim

8   (including page 3 of Exhibit 653) because it is outside the dates of the charged conspiracy (*i.e.*,

9   July 17, 2014, to September 27, 2019).  He also notes that the evidence does not appear to be part

10  of the alleged conspiracy given that a different brokerage was involved (*i.e.*, DHL and not N.F.

11  Stroth).  Technically, Mr. Behm objected on the basis of relevance only, but there may are other

12  issues with this evidence.

13          The Court defers ruling on the motion.  Given the timing, the Court is not persuaded by the

14  government's position that the evidence is admissible because it is inextricably intertwined with

15  the crime charged.  Therefore, the evidence may be admitted only if it qualifies under Rules

16  404(b)(2) and 403.

17          To the extent Defendants have argued that the disclosure under Rule 404(b)(2) was not

18  timely, that appears to be correct.  Rule 404(b)(2) disclosures were to be made by August 11,

19  2023, *see* Docket No. 219 (order); the government did not make clear its intent to use the

20  document until August 23, 2023 (either through its opposition to the in limine motion or through

21  its exhibit list).  However, the timing is not unduly prejudicial, particularly as trial is not until

22  October 10, 2023.

23          Where the Court does have concern is with respect to Rule 403.  Depending on how the

24  government intends to use the evidence, the evidence could be confusing to the jury (given that the

25  conduct took place outside of the period of the charged conspiracy) or it could waste time (as

26  presumably Defendants would point out that this transaction was not within the period of the

27  charged conspiracy, involved a different broker, etc.).  The Court is open to a very limited use of

28  the contested portion of Exhibit 653 – *i.e.*, to show that Mr. Behm had knowledge that not all

United States District Court
Northern District of California

materials could be used as substitutes.  If this evidence were to come in, then the Court would be inclined to exclude Exhibits 631 and 632 under Rule 403.

8.    Motion to Preclude Coconspirator Statements

Mr. Behm has filed a motion to preclude coconspirator statements to the extent the government might try to offer such statements under Rule 801(d)(2)(E).  The Court rejects Mr. Behm's contention that the Court should preclude all coconspirator statements because the government did not timely disclose them.  The Court has discretion on the matter, and, here, there is nothing to indicate that Mr. Behm would be unduly prejudiced (*e.g.*, because the disclosure was only about a week late and was filed more than a month before trial, and because a draft exhibit list provided earlier seems to have included the coconspirator statements).

As noted above, the Court has ordered supplemental briefing on the Rule 801(d)(2)(E) issues.

C.    Mr. Clark's MILs (Docket No. 264) and Objections to Government Witnesses (Docket No. 276)

1.    MIL No. 1

In the first motion in limine, Mr. Clark moves to exclude evidence that he allegedly lost his real estate license due to fraudulent transactions instigated by Mr. Stanka.  The government states in response that it does not intend to offer any evidence about Mr. Clark's conduct or misconduct as Mr. Stanka's real estate agent.  Accordingly, the motion is moot.

2.    MIL No. 2

In the second motion in limine, Mr. Clark notes that Mr. Stanka is not listed as a government witness and therefore moves to exclude any of Mr. Stanka's statements from trial.  In response, the government points out that both Defendants have listed Mr. Stanka as a witness. The government further states that it intends to offer statements made by Mr. Stanka in emails pursuant to Rule 801(d)(2)(E).  As noted above, the Court has asked for supplemental briefing on the Rule 801(d)(2)(E) issue.

3.    MIL No. 3

Mr. Clark's third motion in limine raises the same issue as in Mr. Behm's MIL No. 4.  As

United States District Court
Northern District of California

stated above, Mr. Stanka's pretrial services records shall be provided for in camera review.

### 4. MIL No. 4

In the fourth motion in limine, Mr. Clark moves to exclude past, pending, or potential civil litigation associated with him or the companies affiliated with him, *i.e.*, TPP and/or Hammer Trading. The government states in response that it does not intend to offer any such evidence. The motion is therefore moot.

### 5. MIL No. 5

Mr. Clark's fifth motion in limine raises the same issue as in Mr. Behm's MIL No. 5 (*i.e.*, whether Agents Lope and Kurko are expert witnesses).

### 6. MIL Nos. 6 and 7

In the sixth and seventh motions in limine, Mr. Clark moves to exclude evidence of his personal income tax returns and the tax returns or tax information of businesses associated with him (*i.e.*, TPP and/or Hammer Trading). *See, e.g.*, Exs. 841-42, 851, 853-61. He argues that the information is both irrelevant and unfairly prejudicial. In response, the government argues that the evidence is both relevant and more probative than prejudicial because it reflects that Mr. Clark "benefited from the submission of false claims during the course of the conspiracy. Clark's businesses paid him millions of dollars during the period alleged in the Indictment, and his companies' income flowed through to him as a member and owner." Opp'n at 9. The evidence does have probative value and is therefore relevant. However, the Court defers ruling on the motion as context may be helpful for Rule 403 purposes.

### 7. MIL No. 8

In the eighth motion in limine, Mr. Clark moves to exclude evidence of "other acts" committed by him. This issue has already been addressed above as part of the government's MIL No. 3.

### 8. Objections to Government Witnesses

Mr. Clark has objected to multiple witnesses on the government's original witness list.

- Mr. Alvarenga. The government indicates that it may call Mr. Alvarenga "to testify regarding preparation of drawback claims of PRT by N.F. Stroth . . . ,

United States District Court
Northern District of California

1    functions and responsibilities of a drawback broker and claim preparer, and

2    documents and statements provided to N.F. Stroth by [Mr.] Behm and people

3    acting at [Mr.] Behm's direction." Am. Witness List at 1. Mr. Clark objects that

4    Mr. Alvarenga's testimony has no relevance to Mr. Clark (as opposed to Mr.

5    Behm). This is an issue that arises with many of the bellwether exhibits (for both

6    Mr. Behm and Mr. Clark) and will be addressed below.

7    • Ms. Stroth, Mr. Lawhun, and Ms. Yao. These individuals are all affiliated with

8    N.F. Stroth as well and may testify on topics similar to those designated for Mr.

9    Alvarenga. Mr. Clark makes the same relevance objection as above which is

10   addressed below.

11   • Mr. Fung. Mr. Fung appears to be an employee of PRT. The government states he

12   may be called to testify regarding "business records of [PRT], its business model,

13   preparation of duty drawback claims, including through Trans Pacific Polymers and

14   TPP . . . , and statements made to him by [Mr.] Behm, . . . [Mr.] Stanka, and [Mr.]

15   Clark." Am. U.S. Witness List at 2. Mr. Clark makes the same relevance objection

16   as above which is addressed below.

17   • Ms. Kao and Ms. Chen. Both individuals appear to be PRT employees. They may

18   be called to testify about topics similar to those designated for Mr. Fung – *e.g.*,

19   PRT business records, PRT's business model, and statements made to them by Mr.

20   Behm. Mr. Clark makes the same relevance objection as above which is addressed

21   below.

22   • Mr. Liang. Mr. Liang is affiliated with Bay Area Tire Recycling/ML Trading

23   Group, the company that exported waste or scrap rubber tires. Mr. Clark makes the

24   same relevance objection as above which is addressed below. Mr. Clark also

25   asserts unfair prejudice because Mr. Liang has pled guilty and been sentenced;

26   however, there is a jury instruction to address that fact.

27   • Mr. Vines. Mr. Vines may testify about a meeting with Mr. Clark and Mr. Stanka

28   in which they discussed "going into a prospective drawback business . . . called

Tariff Partners International." Am. U.S. Witness List at 5.  He may also testify about communications with Mr. Stanka regarding DHL Trading; communications with Mr. Clark, Mr. Stanka, and Mr. Burbidge regarding drawback claims; and communication with Mr. Choy regarding export documentation and specific exports, "including an export to Hong Kong that required destruction." Am. U.S. Witness List at 5.  Mr. Clark objected to the original witness list description because the government inadvertently failed to provide a description.  That problem has now been cured with the amended witness list submitted by the government.

- Agent Kurko.  Agent Kurko is one of the investigating agents.  Mr. Clark objected to the original witness list description because the government inadvertently failed to provide a description.  That problem has now been cured with the amended witness list submitted by the government.

- Agent Salsedo.  Agent Salsedo is another one of the investigating agents.  Mr. Clark made the same objection as above.  The problem has been cured.

## V.  **EXHIBITS**

The Court is in receipt of the joint exhibit list.  The Court is also in receipt of the parties' bellwethers.

The Court shall not adjudicate each bellwether as the Court cannot address many of the objections without having context from trial.  However, the Court shall admit Exhibits 2 and 3 (a drawback claim and a check issued for the claim) as neither defendant raised objections.  Also, as noted above, the Court has ordered supplemental briefing on the Rule 801(d)(2)(E) issue, and it expects the parties to work out the emails/attachments issue.

There is, however, one "repeat" objection that is worth addressing.  Specifically, for many of the bellwethers, each defendant has made an objection that an exhibit may be relevant as to the other defendant, but not as to himself.  The problem with this objection is that the government has alleged a single conspiracy involving both defendants, not multiple conspiracies.  Defendants may take issue with this position, of course – *e.g.*, Mr. Behm might argue that he did not have a connection to such a broad conspiracy because Mr. Clark preparing fraudulent drawback claims

for companies other than PRT was of no benefit to PRT (and thereby to Mr. Behm).  However, that is a merits argument as to the scope of the alleged conspiracy for the jury to decide.  *See generally United States v. Umagat*, 998 F.2d 770, 773 (9th Cir. 1993) (considering "the degree of [the defendant's] knowledge, actual or constructive, of the scope of the overall conspiracy, and the extent to which his own benefits depended on the success of the entire venture").

## VI.    JURY INSTRUCTIONS & JURY VERDICT FORM

The Court shall address jury instructions in a separate order.  The parties have stipulated to a verdict form which is reasonable.

**IT IS SO ORDERED**.

Dated: September 8, 2023

_____
EDWARD M. CHEN
United States District Judge